Case 3:17-cv-01457-VAB   Document 1   Filed 08/29/17   Page 1 of 16

**United States District Court**
**District of Connecticut**

FILED
2017 AUG 29 P 1:56
US DISTRICT COURT
BRIDGEPORT CT

DAVID BAILEY,

    Plaintiff,

-v-

INTERBAY FUNDING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW

BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW,

BAYVIEW ASSET MANAGEMENT, LLC dba INTERBAY FUNDING, LLC aka BAYVIEW

BLUE RIBBON APPRAISALS, LLC aka JOHN DOE,

    Defendants,

DOCKET NO:

3:17 cv 1457 (JCH)

AUGUST 27, 2017

## COMPLAINT

**JURISDICTIONAL ALLEGATIONS:**

1. DAVID BAILEY is an individual residing in the state of Maryland.

2. The Defendant INTERBAY FUNDING, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company.

3. The Defendant BAYVIEW LOAN SERVICING, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company.

4. The Defendant BAYVIEW ASSET MANAGEMENT, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company.

Page 1 of 15

5. The Defendant KELLY B. MOYE, SR. is a resident of Connecticut.

6. The Defendant BLUE RIBBON APPRAISALS, LLC is a Connecticut Limited Liability Company.

7. This Court has jurisdiction because the Plaintiff is alleging violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2601 et seq and violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 et seq. Additionally, this court has diversity jurisdiction because the Plaintiff and the Defendants are from different states and the amount in controversy is over $300,000.00.

8. Venue is proper because the Real Estate transaction and the property which gave rise to this action are in this state and the Defendant maintain partial residency in this state.

## FACTUAL ALLEGATIONS

1. The Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC are in business together for a profit.

2. WWW.INTERBAY.COM is forwarded to WWW.BAYVIEWASSETMANAGEMENT.COM and when you call the INTERBAY FUNDING, LLC contact phone number, the phone is answered as Bayview.

3. The physical and mailing address for all three aforementioned Defendants: INTERBAY FUNDING LLC, BAYVIEW LOAN SERVICING, LLC and BAYVIEW ASSET MANAGEMENT, LLC are indentical.

4. The Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT,

LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC are all doing business as BAYVIEW.

5. On or about February 07, 2006 the Plaintiff was contacted by a family friend in regards to the possibility of purchasing of a building located at 607-611 Washington Ave, in New Haven Connecticut "The building",

6. About one week thereafter, the Plaintiff got in contact with the owner of the building whose name was the Defendant Kelly B. Moye aka Mr. Kelly Moye.

7. About the same time, the Defendant Mr. Kelly Moye advised the Plaintiff of the price and told the Plaintiff to contact the Defendant BAYVIEW aka Interbay Funding, LLC.

8. At the same time, Mr. Kelly Moye advised the Plaintiff that the mortgage company already has a property appraisal and building inspection report and that the Plaintiff could review them at the time of the Real Estate Closing.

9. The Plaintiff relied on the appraisal and the building inspection report and complied because he thought it was a good deal to acquire the building which was already occupied by a minority church.

10. The Plaintiff relied on the appraiser's representation that the appraisal was conducted by the Defendant Blue Ribbon Appraisals, LLC which the Plaintiff has learned recently in January, 2017 never really took place.

11. The Plaintiff was told by BAYVIEW aka Interbay Funding, LLC that he did not need an attorney and that one would be provided to him at the closing and to go to the address that was provided to him and to bring his driver's license and the attorney would make a copy of it and that the Plaintiff would have to sign a lot of papers and not to worry. The

Plaintiff was also told by BAYVIEW that he would receive copies of the papers executed at the closing after BAYVIEW received the papers.

12. At the closing, unbeknownst to the Plaintiff, he was represented by the same attorney who represented Interbay Funding, LLC, the seller and the title company.

13. The single attorney asked the Plaintiff to execute several documents very quickly and promised the Plaintiff that he would get copies at a later date after the papers were received by BAYVIEW.

14. To this day, the Plaintiff has NOT received copies of all the original closing paper from BAYVIEW, although the Plaintiff made several request throughout the years since the closing took place.

15. The Plaintiff was told by BAYVIEW that both the building appraisal was perfect for the loan and that the building inspection report shows that the building was in good repair, up to Connecticut state building codes.

16. Soon after the closing, the Plaintiff discovered that the building needed a lot of work and was not up to code and thought it was just bad luck.

17. Over the years, BAYVIEW Loan Servicing LLC requested that the Plaintiff keep them posted on all the building code violations and expenses and BAYVIEW would request that the Plaintiff fax or mail copies of all the receipts and estimates for the work to be performed.

18. Over the years, when the Plaintiff would call BAYVIEW Loan Servicing LLC. to request copies of the closing papers, BAYVIEW would offer the Plaintiff a mortgage modification instead of sending the papers to the Plaintiff. BAYVIEW did that at least three times.

19. Each time the Plaintiff would complaint about the building physical condition and being

underwater in terms of value, the agent of Bayview Loan Servicing, LLC would put the Plaintiff on hold and then promise him a modification. The Plaintiff signed three modification which the Plaintiff has now learned that Bayview never executed which makes them non-binding.

20. On or about July 2014, the Plaintiff spoke with Mr. Paul, who stated he was the Plaintiff's new Mortgage Home Retention Specialist at Bayview Loan Servicing LLC.

21. During the above conversation, Mr. Paul also stated that the Plaintiff should not have received so many modifications but that he saw the reason there were so many modifications.

22. During the above conversation, Mr. Paul told the Plaintiff that after reviewing the Plaintiff's file, he saw that the reason his received so many modification is because the loan was FLAGED and being FLAGED is probably the reason no one wanted to signed the modification on Bayview's end.

23. As a result of the loan being FLAGED, Mr. Paul of Bayview Loan Servicing, LLC asked the Plaintiff whether he would agree to another modification with a principal reduction at the current in-house appraised value of ninety thousand dollars ($90,000.00).

24. In response to Mr. Paul's offer, the Plaintiff accepted the offer by the Defendant Bayview to modify his mortgage with a principal reduction.

25. The Plaintiff was told by Bayview not to worry about the foreclosure case and that the modification paperwork would be FedEx for next day delivery.

26. On or about November 10th, 2014, while the Plaintiff was waiting patiently for his modification papers via Fedex overnight, the Plaintiff received a letter in the mail dated November 10th. 2014 from Bayview Loan Servicing LLC. Lawyer which stated that the

Plaintiff's property is in jeopardy of being foreclosed.

27. As a result of the above letter, the Plaintiff called BAYVIEW and spoke with his Retention Specialist Mr. Paul who told him not to worry because before the Plaintiff goes to court, the Plaintiff would already have received the promised modification with principal reduction and that therefore, the foreclosure court case would be null and void.

28. After waiting and never receiving the modification papers, the Plaintiff called Mr. Paul of BAYVIEW who told him that Bayview Loan Servicing LLC had ordered an EXTERIOR ONLY building appraisal report which appraised the property at one hundred ninety-five thousand ($195,000.00) and therefore, the previous promised of modification and principal reduction could be not honored.

29. The Plaintiff requested to speak to a supervisor Mr. Tom Marvin who told him the same thing the previous agent told him; however, Mr. Marvin confirmed that BAYVIEW was aware that half (1/2) of the building was shut down by the City of New Haven for conditions that pre-existed the time when the Plaintiff purchased the property.

30. The above conditions that caused the city to shut down half (1/2) of the property were not reflected in the appraisal performed by the Defendant BLUE RIBBON APPRAISALS, LLC which showed that nothing was wrong with the property.

31. INTERBAY FUNDING, LLC aka BAYVIEW told the plaintiff that the property was in perfect condition for the loan and the Plaintiff relied on the appraisal to purchase the property.

32. On belief and information obtained by the Plaintiff this past November 2016, the appraisal done for the Plaintiff in order to obtain the loan from INTERBAY FUNDING, LLC was never done for the Plaintiff but instead was done for someone else, one year earlier

in violation of the law.

33. The Defendants concocted a plan to sell the Plaintiff a building which condition was misrepresented, from Mr. Kelly's offer to sell the building and offer to use his current mortgage company to speed up the process, the use of an appraisal that was done someone else, the closing of the loan by an attorney provided by BAYVIEW to not producing any copies of any documents to the Plaintiff and to the building needed a lot of repairs.

34. REMOVED

35. On or about June 2017, the Plaintiff sent a Qualified Written Request to BAYVIEW LOAN SERVICING, LLC and as of today 8/26/2017, the Defendant BAYVIEW LOAN SERVICING, LLC has failed to comply even after the Connecticut Banking Commissioner has contacted Bayview on behalf of the Plaintiff.

36. On information and belief, the Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC have created an account under the Plaintiff's name and social security number and that account has over three hundred thousand dollars ($300,000.00) in escrow.

37. The money in that escrow account belongs to the Plaintiff and the Defendants refuse to return the funds to the Plaintiff.

38. The Defendants have never stopped their behavior of misleading the Plaintiff from the time before the foreclosure was instituted to today. The Defendants continued to mislead the Plaintiff until February 2017 when the Appellate Court rendered its decision that the Plaintiff lost.

39. The Defendants engaged in "DUAL TRACKING" which is when the banks' representatives tell the property owner that everything is going to be okay, while at the same time its foreclosure attorney, in the court case proceed to take legal possession of the property which is exactly what happened in this case.

## COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. 1692 et seq
### (As to BAYVIEW LOAN SERVICING, LLC and as to BAYVIEW ASSET MANAGEMENT as a general partner)

1-39    Paragraph 1 through 39 of the factual allegations are hereby incorporated and made paragraph 1 through 39 of this count.

40  The Plaintiff is a consumer as that term is defined by 15 U.S.C. 1692a(3).

41  The mortgage loan that is the subject of this litigation is a debt as that term is defined by 15 U.S.C. 1692a(5).

42  BAYVIEW LOAN SERVICING, LLC is a debt collector as that term is defined by 15 U.S.C. 1962a(6)

43  BAYVIEW LOAN SERVICING, LLC continued and never stopped until February 2017 to engage in conduct violating one or more sections of 15 U.S.C. 1962 et seq, by doing the following non-exhaustive list of acts:

a) Made false, deceptive and/or misleading representations in connection with its efforts to collect a debt as prohibited by 15 U.S.C. 1692e.

b) Kept promising the Plaintiff a modification with principal reduction which he never received.

44  As a result of the actions of the Defendant BAYVIEW LOAN SERVICING, LLC, the cross Plaintiff incurred damages and is entitled to all relief under 15 U.S.C. 1692k including but limited to statutory damages, actual damages, attorney fees and costs of suit.

45  As of the general partnership between the BAYVIEW Defendants, each is liable for the actions of the others.

### COUNT II – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. 2601 et seq.
(As to BAYVIEW LOAN SERVICING, LLC and as to BAYVIEW ASSET MANAGEMENT as a general

1-39  Paragraph 1 through 39 of the factual allegations are hereby incorporated and made paragraph 1 through 39 of this count.

40  BAYVIEW LOAN SERVICING, LLC is a loan servicing company subject to the requirements of the Real Estate Settlement Procedures Act ("RESPA").

41  BAYVIEW LOAN SERVICING, LLC never responded to the Plaintiff Qualified Written Request within the time prescribed by law even after the Plaintiff call the Defendant BAYVIEW LOAN SERVICING, LLC to remind them that it has been two months since the request was received.

42  BAYVIEW LOAN SERVICING, LLC was obligated to respond to the QWR.

43  As a result of the BAYVIEW LOAN SERVICING, LLC's conduct, the Plaintiff incurred damages and is entitled to all relief afforded under 12 U.S.C. 2605(f) including to statutory damages, actual damages, attorney fees and costs.

44  As of the general partnership between the above Defendant and BAYVIEW ASSET MANAGEMENT, each is liable for the actions of the others.

188. Contrary to the Defendants' representation, the agreement was a bait and switched and a criminal act to get the Plaintiff's signature in order to securitized his note and create money which they can later use to create more money.

189. The Defendants misrepresented their intentions to the Plaintiff.

190. The Defendants knew or should have known that they were going to use the Plaintiff's name and social security number without her consent to create money.

191. The Plaintiff reasonably relied on the agreement given by the Defendants since they are nationally known lending institutions.

192. The actions of the Defendants of bait and switch and stealing and converting was deceptive, fraudulent, unscrupulous, unethical, immoral and illegal as described above, and violates the public policies of the State of Connecticut

193. The actions of the Defendants of using an old appraisal which they knew was fake was deceptive, fraudulent, unscrupulous, unethical, immoral and illegal as described above, and violates the public policies of the State of Connecticut

194. The aforementioned patterns and practices and actions of the Defendant were designed to enrich the Defendants at the expense of the Plaintiff.

195. As a result of similar actions by the Defendants the whole real estate market of the United States and Connecticut has suffered money damages.

196. As a direct and proximate result of the actions of the Defendants, the Plaintiff sustained loss of money, time and emotional distress.

197. A copy of this complaint was sent to the Connecticut Department of Consumer Protection Commissioner and the Attorney General Office George Jepsen.

40  The Defendants told the Plaintiff that the property was appraised at a value high enough to support the loan and that the property condition was good enough to support a regular loan that requires no repairs.

41  The Defendants knew the appraised value was untrue because the appraisal was actually done for another party one year earlier before the Plaintiff even met the seller of the property.

42  The Defendants knew the appraisal was fake.

43  The Defendants knew the building was not in the condition reported in the appraisal in order for the Plaintiff to qualify for the loan.

44  The Defendants' statements of the appraised value of the property were made to induce the Plaintiff to purchase the property and to execute the loan papers.

45  The Plaintiff reasonable relied on the Defendants' statements of the appraised value and condition of the property and purchased the property and executed the loan papers.

46  As a result of the Defendants' conduct and the Plaintiff's reasonable reliance on the Defendants' statements, the Plaintiff incurred money damages, was foreclosed on, suffered extreme emotion distress and continues to suffer financially.

47  As a result of the general partnership between the above BAYVIEW Defendants, each is liable for the actions of the others.

### COUNT V-CIVIL CONSPIRACY

#### (as to all Defendants)

1-40   Paragraph 1 through 47 of the IV (FRAUD COUNT) allegations are hereby incorporated and made paragraph 1 through 47 of this count.

48   The Defendants devised a plan to take sell the Plaintiff a ruined property appraised as being good.

49   The Defendants knew and intended to defraud the Plaintiff by using a fake appraisal in order the Plaintiff purchase the property from the Defendant Mr. Kelly and obtain a loan from the Defendants BAYVIEW.

50   The Defendants acted in violation of the Connecticut Unfair Trade Practice Act when they committed these acts against the Plaintiff.

51   As a result of the Defendants' conduct, the Plaintiff incurred damages

52   As of the general partnership between the above BAYVIEW Defendants, each is liable for the actions of the others.

### COUNT V-CONNECTICUT UNFAIR TRADE PRACTICES ACT

(as to INTERBAY FUNDING, LLC , BAYVIEW LOAN SERVICING, LLC, BAYVIEW ASSET MANAGEMENT, LLC, BLUE RIBBON APPRAISALS, LLC)

1-45   Paragraph 1 through 45 of count I are hereby incorporated and made paragraph 1 through 45 of this count.

46-89 Paragraph 1 through 44 of count II factual allegations are hereby incorporated and made paragraph 46 through 89 of this count.

90-134 Paragraph 1 through 44 of count III factual allegations are hereby incorporated and made paragraph 90 through 134 of this count.

135-182 Paragraph 1 through 47 of count IV factual allegations are hereby incorporated and made paragraph 135 through 182 of this count.

183. The Defendants' course of conduct, as alleged herein, has been undertaken in the conduct of trade and commerce as defined in Conn. Gen. Stat. section 42-110a(4)

184. On at least one occasion, since 2006 until February 2017, in the process of giving the Plaintiff a loan, servicing the loan, the Defendants misrepresented the facts to the Plaintiff.

185. On at least one other occasion, as alleged in the factual allegations, the Defendants or their predecessor entered into a contract to lend money to the Plaintiff as it is commonly described when a consumer purchases a real estate with a loan from a lending institution.

186. On several other occasions, the Defendants interred into contracts with consumers like the Plaintiff for the purpose of stealing from them.

187. The Defendants have made or caused to be made, directly or indirectly, explicitly or by implication, representations and omissions to the Plaintiff and Connecticut consumers.

188. Contrary to the Defendants' representation, the agreement was a bait and switched and a criminal act to get the Plaintiff's signature in order to securitized his note and create money which they can later use to create more money.

189. The Defendants misrepresented their intentions to the Plaintiff.

190. The Defendants knew or should have known that they were going to use the Plaintiff's name and social security number without her consent to create money.

191. The Plaintiff reasonably relied on the agreement given by the Defendants since they are nationally known lending institutions.

192. The actions of the Defendants of bait and switch and stealing and converting was deceptive, fraudulent, unscrupulous, unethical, immoral and illegal as described above, and violates the public policies of the State of Connecticut

193. The actions of the Defendants of using an old appraisal which was accurate was deceptive, fraudulent, unscrupulous, unethical, immoral and illegal as described above, and violates the public policies of the State of Connecticut

194. The aforementioned patterns and practices and actions of the Defendant were designed to enrich the Defendants at the expense of the Plaintiff.

195. As a result of similar actions by the Defendants the whole real estate market of the United States and Connecticut has suffered money damages.

196. As a direct and proximate result of the actions of the Defendants, the Plaintiff sustained loss of money, time and emotional distress.

197. A copy of this complaint was sent to the Connecticut Department of Consumer Protection Commissioner and the Attorney General Office George Jepsen.

WHEREFORE, the Plaintiff demands:

1. DECLARE THE DEED in favor of the cross Defendant INVALID
2. Money damages
3. Award of legal fees.
4. All relief afforded under 12 U.S.C. 2605(f) including to statutory damages, actual damages, attorney fees and costs.
5. all relief under 15 U.S.C. 1692k including but limited to statutory damages, actual damages, attorney fees and costs of suit.
6. Return of the Plaintiff's funds from the bank account in control of the Defendants
7. Economic damages;
8. Compensatory damages;
9. Punitive damages under Connecticut law in the form of an award of attorney fees for this action;
10. Any other relief the Court deems fair and equitable.

### JURY DEMAND

The Plaintiff demands a jury trial on all issues so triable.

THE PLAINTIFF,

_____<br>DAVID BAILEY

WHEREFORE, the Plaintiff demands:

1. DECLARE THE DEED in favor of the cross Defendant INVALID
2. Money damages
3. Award of legal fees.
4. All relief afforded under 12 U.S.C. 2605(f) including to statutory damages, actual damages, attorney fees and costs.
5. all relief under 15 U.S.C. 1692k including but limited to statutory damages, actual damages, attorney fees and costs of suit.
6. Return of the Plaintiff's funds from the bank account in control of the Defendants
7. Economic damages;
8. Compensatory damages;
9. Punitive damages under Connecticut law in the form of an award of attorney fees for this action;
10. Any other relief the Court deems fair and equitable.

## JURY DEMAND

The Plaintiff demands a jury trial on all issues so triable.

THE PLAINTIFF.

*David Bailey*
DAVID BAILEY
2911 Dixwell Ave
Suite 306
Hamden, CT 06518