United States District Court
District of Connecticut

DAVID BAILEY,

        Plaintiff,

    -v-

INTERBAY FUNDING, LLC et Al

        Defendants,

DOCKET NO: 3:11-CV-01457-JCH

NOVEMBER 20, 2017

## REVISED AND AMENDED COMPLAINT

### (to include missing counts and withdraw other counts)

**JURISDICTIONAL ALLEGATIONS:**

1.    DAVID BAILEY is an individual residing in the state of Maryland.

2.    The Defendant INTERBAY FUNDING, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company.

3.    The Defendant BAYVIEW LOAN SERVICING, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company.

4.    The Defendant BAYVIEW ASSET MANAGEMENT, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company.

5.    The Defendant BLUE RIBBON APPRAISALS, LLC is a Connecticut Limited Liability Company.

6.    This Court has diversity jurisdiction because the Plaintiff and the Defendants are from different states and the amount in controversy is over $300,000.00.

7. Venue is proper because the Real Estate transaction and the property which gave rise to this action are in this state.

## FACTUAL ALLEGATIONS

1. The Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC are in business together for a profit.

2. WWW.INTERBAY.COM is forwarded to WWW.BAYVIEWASSETMANAGEMENT.COM and when you call the INTERBAY FUNDING, LLC contact phone number, the phone is answered as Bayview.

3. The physical and mailing address for all three aforementioned Defendants: INTERBAY FUNDING LLC, BAYVIEW LOAN SERVICING, LLC and BAYVIEW ASSET MANAGE-MENT, LLC are indentical.

4. The Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC are all doing business as BAYVIEW.

5. On or about February 07, 2006 the Plaintiff was contacted by a family friend in regards to the possibility of purchasing of a building located at 607-611 Washington Ave, in New Haven Connecticut "The building",

6. About one week thereafter, the Plaintiff got in contact with the owner of the building whose name was the Defendant Kelly B. Moye aka Mr. Kelly Moye.

7. About the same time, the Defendant Mr. Kelly Moye advised the Plaintiff of the price

and told the Plaintiff to contact the mortgage company named BAYVIEW.

8. At the same time, Mr. Kelly Moye advised the Plaintiff that the mortgage company already has a good property appraisal and building inspection report and that the Plaintiff could review them at the time of the Real Estate Closing.

9. The Plaintiff relied on the appraisal and the building inspection report and complied because he thought it was a good deal to acquire the building which was already occupied by a minority church.

10. The Plaintiff relied on the appraiser's representation that the appraisal was conducted by the Defendant Blue Ribbon Appraisals, LLC which the Plaintiff has learned recently in January, 2017 never really took place.

11. The Plaintiff was told by BAYVIEW that he did not need an attorney and that one would be provided to him at the closing and to go to the address that was provided to him and to bring his driver's license and the attorney would make a copy of it and that the Plaintiff would have to sign a lot of papers and not to worry.   The Plaintiff was also told by BAYVIEW that he would receive copies of the papers executed at the closing after BAYVIEW received the papers.

12. At the closing, unbeknownst to the Plaintiff, he was represented by the same attorney who represented BAYVIEW, the seller and the title company.

13. The single attorney asked the Plaintiff to execute several documents very quickly and promised the Plaintiff that he would get copies at a later date after the papers were received by BAYVIEW.

14. To this day, the Plaintiff has NOT received copies of all the original closing paper from BAYVIEW, although the Plaintiff made several request throughout the years since the

closing took place.

15. The Plaintiff was told by BAYVIEW that both the building appraisal was perfect for the loan and that the building inspection report shows that the building was in good repair, up to Connecticut state building codes.

16. Soon after the closing, the Plaintiff discovered that the building needed a lot of work and was not up to code and thought it was just bad luck.

17. Over the years, BAYVIEW Loan Servicing LLC requested that the Plaintiff keep them posted on all the building code violations and expenses and BAYVIEW would request that the Plaintiff fax or mail copies of all the receipts and estimates for the work to be performed.

18. Over the years, when the Plaintiff would call BAYVIEW Loan Servicing LLC. to request copies of the closing papers, BAYVIEW would offer the Plaintiff a mortgage modification instead of sending the papers to the Plaintiff.  BAYVIEW did that at least three times.

19. On or about July 2014, the Plaintiff spoke with Mr. Paul, who is the Plaintiff's Mortgage Home Retention Specialist at Bayview Loan Servicing LLC. And he told the Plaintiff that the PRINCIPAL REDUCTION papers should have been received.

20.  Each time the Plaintiff would complain about the building being underwater in terms of value, the agent of Bayview Loan Servicing, LLC would put the Plaintiff on hold and then promise him a modification with a principal reduction.

21. Bayview Loan Servicing, LLC made such promise of modification with principal reduction right before it instituted a foreclosure against in Connecticut State Court in August, 2014.

22. The Plaintiff was told by Bayview not to worry about the foreclosure case.

23. On or about November 2014, the Plaintiff was on the phone with the BAYVIEW's agent who told the Plaintiff he was completing what he called an in house property appraisal a valuation in order to determine the principal reduction amount.

24. During the above phone conversation, the Bayview's agent told the Plaintiff that the value of the property was about ninety thousand dollars ($90,000.00).

25. During the above conversation, the BAYVIEW's agent told the Plaintiff that his new mortgage principal amount would be ninety thousand dollars ($90,000.00) because of the appraised value and he also promised the Plaintiff that the modification papers would be sent via FedEx overnight.

26. While the Plaintiff was waiting patiently for his modification papers via Fedex overnight , the Plaintiff received a letter in the mail dated November 10th. 2014 from Bayview Loan Servicing LLC. Lawyer which stated that the Plaintiff's property is in jeopardy of being foreclosed.

27. As a result of the above letter, the Plaintiff called BAYVIEW and spoke with his Retention Specialist Mr. Paul who told him not to worry because before the Plaintiff goes to court, the Plaintiff would already have received a PRINCIPAL REDUCTION and that therefore, the foreclosure court case would be null and void.

28. After waiting for never received the modification papers, the Plaintiff called Mr. Paul of BAYVIEW who told him that Bayview Loan Servicing LLC had ordered an EXTERIOR ONLY building appraisal report which appraised the property at one hundred ninetyfive thousand ($195,000.00) and there, the previous promise of modification and loan reduction could be honored.

29. The Plaintiff requested to speak to a supervisor Mr. Tom Marvin who told him the same

thing the previous agent told him; however, Mr. Marvin confirmed that BAYVIEW was aware that half (1/2) of the building was shut down by the City of New Haven for conditions that pre-existed the time when the Plaintiff purchased the property.

30. The above conditions that caused the city to shut down half (1/2) of the property were not reflected in the appraisal which showed that nothing was wrong with the property.

31. INTERBAY FUNDING, LLC aka BAYVIEW told the plaintiff that the property was in perfect condition for the loan and the Plaintiff relied on the appraisal to purchase the property.

32. On belief and information obtained by the Plaintiff this past November 2016, the appraisal done for the Plaintiff in order to obtain the loan from INTERBAY FUNDING, LLC was never done for the Plaintiff but instead was done for the previous owner of the building, Defendant Kelly B. Moye, one year earlier in violation of the law.

33. The Defendants all concocted a plan to sell the Plaintiff a building which condition was misrepresented, from Mr. Kelly's offer to sell the building and offer to use his current mortgage company to speed up the process, the use of an appraisal that was done for the previous Mr. Kelly, the closing of the loan by an attorney provided by BAYVIEW to not producing any copies of any documents to the Plaintiff and to the building needed a lot of repairs.

34. While in Connecticut State Court of Appeal, on or about September 2016, the Plaintiff was told by a representative of Bayview Loan Servicing, LLC not to worry about the foreclosure and that he would get a modification which would void the foreclosure.

35. On or about June 2017, the Plaintiff sent a Qualified Written Request to BAYVIEW LOAN SERVICING, LLC and as of today 8/26/2017, the Defendant BAYVIEW LOAN

SERVICING, LLC has failed to comply even after the Connecticut Banking Commissioner has contacted Bayview on behalf of the Plaintiff.

36. On information and belief, the Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC have created an account under the Plaintiff's name and social security number and that account has over three hundred thousand dollars ($300,000.00) in escrow.

37. The money in that escrow account belongs to the Plaintiff and the Defendants refuse to return the funds to the Plaintiff.

38. The Defendants have never stopped their behavior of misleading the Plaintiff from the time before the foreclosure was instituted to today.  The Defendants continued to mislead the Plaintiff until February 2017 when the Appellate Court rendered its decision that the Plaintiff lost.

39. The Defendants engaged in the concept of "DUAL TRACKING" which is when the banks' representative tell the home everything is going to be while the attorney in the court case proceed to take legal possession of the property.  That is exactly what occured in this case.

<u>COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. 1692 et seq</u>
<u>(As to BAYVIEW LOAN SERVICING, LLC and as to BAYVIEW ASSET MANAGEMENT as a general partner)</u>

**REMOVED**

<u>COUNT II – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. 2601 et seq.
(As to BAYVIEW LOAN SERVICING, LLC and as to BAYVIEW ASSET MANAGEMENT</u>

<u>as a general</u>

**REMOVED**

<u>COUNT III – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. 2601 et seq.
As to all the INTERBAY FUNDING, LLC and as the BAYVIEW Defendants as general</u>

<u>partners</u>

**MISSING AND NOT REVISED**

### COUNT IV-FRAUD

### (as to all Defendants)

1-39   Paragraph 1 through 39 of the factual allegations are hereby incorporated and made paragraph 1 through 39 of this count.

40   The Defendants devised a plan to take sell the Plaintiff a ruined property appraised as being good.

41   The Defendants knew and intended to defraud the Plaintiff by using a fake appraisal in order the Plaintiff purchase the property from the Defendant Mr. Kelly and obtain a loan from the Defendants BAYVIEW.

42   The Defendants induced the Plaintiff to purchase the ruined building with a fake appraisal and to get a loan that the Defendants knew would likely fail.

43  The Defendants knew the appraisal was fake.

44  The Defendants knew the building was not in the condition reported in order to be qualified for the loan.

45  Had it not been for the fake appraisal and using the same mortgage company of the previous owner Defendant Mr. Kelly, the Plaintiff would not have been able to purchase the property which turned to be a ruin.

46  As a result of the Defendants' conduct, the Plaintiff incurred damages

47  As of the general partnership between the above BAYVIEW Defendants, each is liable for the actions of the others.

## COUNT V-CIVIL CONSPIRACY

### (as to all Defendants)

1-47   Paragraph 1 through 47 of the IV (FRAUD COUNT) allegations are hereby incorporated and made paragraph 1 through 47 of this count.

48  The Defendants devised a plan to take sell the Plaintiff a ruined property appraised as being good.

49  The Defendants knew and intended to defraud the Plaintiff by using a fake appraisal in order the Plaintiff purchase the property from the Defendant Mr. Kelly and obtain a loan from the Defendants BAYVIEW.

50  The Defendants acted in violation of the Connecticut Unfair Trade Practice Act when they committed these acts against the Plaintiff.

51  As a result of the Defendants' conduct, the Plaintiff incurred damages

52  As a result of the general partnership between the above BAYVIEW Defendants, each is liable for the actions of the others.

## COUNT VI-CONNECTICUT UNFAIR TRADE PRACTICES ACT
## (as to INTERBAY FUNDING, LLC , BAYVIEW LOAN SERVICING, LLC, BAYVIEW ASSET MANAGEMENT, LLC)

1-47 Paragraph 1 through 47 of count IV are hereby incorporated and made paragraph 1 through 47 of this count.

48. The Defendants' course of conduct, as alleged herein, has been undertaken in the conduct of trade and commerce as defined in Conn. Gen. Stat. section 42-110a(4)

49. On at least one occasion, since 2006 until February 2017, in the process of giving the Plaintiff a loan, servicing the loan, the Defendants misrepresented the facts to the Plaintiff.

50. On at least one other occasion, as alleged in the factual allegations, the Defendants or their predecessor entered into a contract to lend money to the Plaintiff as it is commonly described when a consumer purchases a real estate with a loan from a lending institution.

51. On several other occasions, the Defendants interred into contracts with consumers like the Plaintiff for the purpose of stealing from them.

52. The Defendants have made or caused to be made, directly or indirectly, explicitly or by implication, representations and omissions to the Plaintiff and Connecticut consumers.

53. Contrary to the Defendants' representation, the agreement was a bait and switched and a criminal act to get the Plaintiff's signature in order to securitized his note and create money which they can later use to create more money.

54. The Defendants misrepresented their intentions to the Plaintiff.

55. The Defendants knew or should have known that they were going to use the Plaintiff's name and social security number without her consent to create money.

56. The Plaintiff reasonably relied on the agreement given by the Defendants since they are nationally known lending institutions.

57. The actions of the Defendants of bait and switch and stealing and converting was deceptive, fraudulent, unscrupulous, unethical, immoral and illegal as described above, and violates the public policies of the State of Connecticut

58. The actions of the Defendants of using an old appraisal which was accurate was deceptive, fraudulent, unscrupulous, unethical, immoral and illegal as described above, and violates the public policies of the State of Connecticut

59. The aforementioned patterns and practices and actions of the Defendant were designed to enrich the Defendants at the expense of the Plaintiff.

60. As a result of similar actions by the Defendants the whole real estate market of the United States and Connecticut has suffered money damages.

61. As a direct and proximate result of the actions of the Defendants, the Plaintiff sustained loss of money, time and emotional distress.

62. A copy of this complaint was sent to the Connecticut Department of Consumer Protection Commissioner and the Attorney General Office George Jepsen.

WHEREFORE, the Plaintiff demands:

1. Money damages

2. Award of legal fees.

3. Return of the Plaintiff's funds from the bank account in control of the Defendants

4. Punitive damages under Connecticut law in the form of an award of attorney fees for this action;

5. Any other relief the Court deems fair and equitable.

## JURY DEMAND

The Plaintiff demands a jury trial on all issues so triable.

                              THE PLAINTIFF.

/s/__Andre Cayo (ct29012)__
Andre Cayo, Esq. (Ct29012)
Law Offices of Cayo & Associates, LLC
84 W. Park Place, 3rd Floor
Stamford, CT 06901
203-517-0416  Phone
203-517-0418 Fax
Cayolaw@gmail.com

## CERTIFICATION

This is to certify that on this date hereof, a copy of the foregoing was electronically filed and served on anyone unable to accept the electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic system or by mail to parties exempt from the ECF system.

 /s/ Andre Cayo (ct29012)

Andre Cayo, Esq.