**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAVID BAILEY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-1457 (JCH) |
| v. | : | |
| | : | |
| INTERBAY FUNDING, LLC, ET AL., | : | APRIL 4, 2018 |
| Defendants. | : | |
| | : | |

**RULING RE: MOTIONS TO DISMISS (DOC. NOS. 44 & 47) AND MOTION TO AMEND THIRD AMENDED COMPLAINT (DOC. NO. 60)**

## I.    INTRODUCTION

This case comes before the court pursuant to a Complaint filed by the plaintiff,

David Bailey ("Bailey"), against the defendants, Interbay Funding, LLC ("Interbay");

Bayview Loan Servicing, LLC, and Bayview Asset Management, LLC (collectively the

"Bayview defendants"), and Blue Ribbon Appraisals, LLC ("Blue Ribbon").  In his Third

Amended Complaint, Bailey alleges four counts against various combinations of

defendants, including claims of fraud (Counts Four and Seven); civil conspiracy (Count

Five); and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"),

Connecticut General Statutes section 42-110a et seq (Count Six).[1]  See Third Amended

---

[1] The Third Amended Complaint contains counts numbered one through nine.  However, Counts One through Three state "Removed" or "Missing and Not Revised." 3d Am. Compl. at 7–8.  In addition, Count Nine alleged violation of title 42 section 1983 of the United States Code ("section 1983"). However, Bailey withdrew the section 1983 claim in his Response to the Motion to Dismiss filed by Interbay and the Bayview defendants, presumably because section 1983 is only cognizable against state actors.  See Plaintiff's Response to Motion to Dismiss by Interbay and Bayview Defendants (Doc. No. 54) at 8.  Finally, Count Eight is styled as a claim of fraud, but merely incorporates all the paragraphs of the preceding count, Count Seven, which is also styled as a claim of fraud, both of which are alleged against the Bayview defendants.  See 3d Am. Compl. at 16.  Interbay and the Bayview defendants point out that Count Eight appeared to be duplicative with Count Seven in their Motion to Dismiss, and Bailey does not dispute that characterization in his Response.  Therefore, in this Ruling, the only Counts that the court addresses are Counts Four through Seven and, with respect to Bailey's Motion to Amend, Bailey's proposed Count Ten.

Complaint ("3d Am. Compl.") (Doc. No. 42). Bailey has also moved to amend his Third

Amended Complaint in order to add a claim of breach of oral contract. <u>See</u> Motion to

Amend Third Amended Complaint (Doc. No. 60). All of Bailey's claims arise out of a

property sale that occurred in 2006 or a foreclosure action that took place from 2014 to

2017. <u>See generally</u> 3d Am. Compl.

On December 7, 2017, defendant Blue Ribbon filed a Motion to Dismiss, arguing

that Bailey's claims were barred by the statute of limitations and that Connecticut state

law protects Blue Ribbon from liability against Bailey. <u>See generally</u> Defendant Blue

Ribbon's Motion to Dismiss Plaintiff's Third Amended Complaint ("Blue Ribbon's Mot.")

(Doc. No. 44).

On January 4, 2018, Interbay and the Bayview defendants filed a joint Motion to

Dismiss Bailey's Third Amended Complaint. See generally Interbay and Bayview

Defendants' Motion to Dismiss ("Interbay's Mot.") (Doc. No. 47). In their Motion,

Interbay and the Bayview Defendants argue that Bailey's claims are barred in their

entirety by the Rooker-Feldman doctrine. <u>Id.</u> In the alternative, Interbay and the

Bayview defendants argue that Bailey's claims are barred by res judicata, collateral

estoppel, the applicable statute of limitations, or the litigation privilege doctrine; that he

has failed to plead his fraud claims with adequate specificity; and that he has not

alleged conduct on their part that violates CUTPA. <u>Id.</u>

For the reasons that follow, the Motions to Dismiss (Doc. Nos. 44 & 47) are

granted, and Bailey's Motion to Amend (Doc. No. 60) is denied.

## II.    STANDARD OF REVIEW

 Blue Ribbon moves to dismiss the Third Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), while Interbay and the

Bayview defendants bring their Motion to Dismiss pursuant to both Rule 12(b)(1) and Rule 12(b)(6). <u>See</u> Blue Ribbon's Mot.; Interbay's Mot.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). When deciding a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. <u>See</u> <u>Aurecchione v. Schoolman Transp. Sys., Inc.</u>, 426 F.3d 635, 638 (2d Cir. 2005). The court takes as true all material factual allegations in the complaint, but "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." <u>Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992).

With respect to a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief" (alteration in original)). The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. <u>Crawford v. Cuomo</u>, 796 F.3d 252, 256 (2d Cir. 2015). However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

## III.    ALLEGED FACTS

The following allegations are taken from the Third Amended Complaint, the exhibits attached thereto, and the filings in the underlying foreclosure action in Connecticut Superior Court.[2]

Plaintiff Bailey is an individual residing in Maryland. See 3d Am. Compl. at 1. Defendant Blue Ribbon is an appraisal company located in Connecticut. Id. Interbay and the Bayview defendants are Delaware corporations. Id. Interbay and the Bayview defendants are in business together for profit and operate collectively as "Bayview." Id. at 2.

On or about February 7, 2006, Bailey was contacted by a family friend about the possibility of purchasing a commercial property located at 607–611 Washington Avenue, New Haven, Connecticut ("the property"). Id. Approximately one week later, Bailey spoke with then-owner of the property, Kelly Moye ("Moye"). Id. During that

---

[2] At the pleading stage, courts may take judicial notice of matters of public record such as pleadings and orders in another action. See, e.g., Est. of Axelrod v. Flannery, 476 F. Supp. 2d 188, 201 (D. Conn. 2007); see also Fed. R. Evid. 201(b)(2) (courts may take judicial notice of a fact that "is not subject to reasonable dispute because it[ ] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

conversation, Moye informed Bailey that the mortgage company, Bayview, "already ha[d] a good property appraisal and building inspection report," which Bailey could review at the time of closing.  Id. at 3.  Relying on the appraisal and building report to which Moye referred, Bailey purchased the property.  Id. at 3–4.  His mortgage for the property was serviced by Bayview Loan Servicing, LLC.  Id. at 4.

Shortly after the closing, Bailey discovered that the building needed a lot of work and was not up to code.  Id. at 4.  By 2014, Bailey was "underwater" in terms of his mortgage payments to Bayview Loan Servicing, LLC.  Id.  On multiple occasions, including shortly before August 2014, Bayview Loan Servicing, LLC, promised him a loan modification with a principal reduction.  Id.

In August 2014, Bayview Loan Servicing, LLC, initiated a foreclosure action against Bailey in Connecticut Superior Court.  Id.  On August 19, 2014, the defendants filed a Summons, Complaint, and Return of Service in the foreclosure case.  See id. at 12.  On September 22, 2014, the defendants served the Secretary of State of Connecticut.  See id.  They also attempted to serve Bailey at his home, but Bailey never received service of process.  See id. at 12, 14.  However, a return of service was filed in the foreclosure action reflecting that receipts for certified mail had been signed on August 19, 2014.  See Exh. B, 3d Am. Compl. (Doc. No. 42-6) at 1.  The United States Postal Service later sent Bailey a letter stating that, upon investigation, the Postal Service had identified that the certified mail in question was signed by a postal carrier on August 19, 2014.  See Exh. C, 3d Am. Compl. (Doc. No. 42-5).

Bailey did not file an appearance or an answer in the foreclosure action and, on October 27, 2014, a default judgment of foreclosure entered against Bailey.  See Exh.

D, 3d Am. Compl. (Doc. No. 42-4) at 1.  The judgment provides that law days[3] will

commence on November 24, 2014.  Id.

Subsequently, Bailey filed an Appearance and a Motion to Open in Connecticut

Superior Court.  See Exh. A, 3d Am. Compl. (Doc. No. 42-1).  In this Motion to Open,

Bailey asserted the following: "Bayview lied to me about my receiving a principal

reduction and a loan modification!  And they also provided false appraisal documents!"

Id. at 2.  That Motion to Open was denied by the Superior Court judge on June 5, 2017.

See Bayview Loan Servicing, LLC v. Bailey, NNI-CV14-6007566-S.[4]  On June 9, 2017,

Bailed filed a Second Motion to Open alleging lack of personal jurisdiction, fraud,

unclean hands, and lack of notice.  Id.  The Superior Court judge denied Bailey's

Second Motion to Open on June 26, 2017.  Id.  Bailey filed this action on August 31,

2017.  Bailey then filed a Third Motion to Open in the foreclosure action alleging fraud

on September 22, 2017, to which Bayview Loan Servicing, LLC, objected.  Id.  The

Superior Court judge sustained that objection on November 6, 2017.[5]  Id.

## IV.    ANALYSIS

In his Third Amended Complaint, Bailey alleges the following claims: (1) fraud

related to the alleged fake appraisal, Count Four, against all defendants; (2) civil

conspiracy based on the fraud alleged in Count Four, Count Five, against all

---

[3] Pursuant to Connecticut foreclosure law, a judgment of strict foreclosure must include the setting of law days, and is not final until those law days have passed.  See Sovereign Bank v. Licata, 178 Conn. App. 82, 98 (2017).

[4] The docket and filings in the foreclosure case is publicly available at http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=NNICV146007566S.

[5] The court notes that, on March 8, 2018, Bailey filed a Fourth Motion to Open relating to another property, which does not appear to relate to the allegations in the case before this court.  See Bayview Loan Servicing, LLC v. Bailey, NNI-CV14-6007566-S.  No further action has been taken in the state matter as of the date of this Ruling.

defendants; (3) violations of CUTPA, Count Six, against Interbay and the Bayview defendants; and (4) fraud related to the default foreclosure judgment, Count Seven, against the Bayview defendants.[6]

Because the claims raise distinct legal questions as alleged against different defendants, the court first addresses the claims alleged against Blue Ribbon and then turns to the claims against Interbay and the Bayview defendants.

A.    Claims Against Blue Ribbon

Bailey alleges two claims against Blue Ribbon: fraud related to an allegedly fake appraisal (Count Four) and civil conspiracy based on that appraisal-related fraud (Count Five).  In support of these claims, Bailey alleges that Blue Ribbon represented that it conducted an appraisal, which did not take place at the time he purchased the property. See 3d Am. Compl. at 3.  Bailey further alleges that he learned the appraisal in question did not take place at the time of his purchase from "the wife of the owner of Blue Ribbon" in January 2017. Id.  Bailey also alleges that the appraisal in question "was done for the previous owner of the building, Defendant [sic] Kelly B. Moye, one year earlier in violation of the law."[7] Id. at 6.  Bailey also conclusorily alleges, but does not plead facts to support, that all defendants, including Blue Ribbon, "devised a plan to take [sic] sell the Plaintiff a ruined property appraised as being good" and "knew and intended to defraud the Plaintiff by using a fake appraisal in order [sic] the Plaintiff purchase the property from the Defendant [sic] Mr. Kelly and obtain a loan from the Defendants Bayview." Id. at 9.

---

[6] Although the Third Amended Complaint contains nine numbered counts, the court addresses only Counts Four through Seven in this Ruling for the reasons explained in note 1, supra.

[7] Moye is not, and has never been, a defendant in this action.

In its Motion to Dismiss, Blue Ribbon argues that Bailey's claims regarding the appraisal are barred by the statute of limitations as well as Connecticut General Statutes section 36a-755, which prohibits liability of real estate appraisers against any party other than the party with whom the appraiser contracted. <u>See</u> Blue Ribbon's Mot. at 1.

### 1. Statute of Limitations

In Connecticut, fraud and civil conspiracy are both subject to a three year statute of limitations. Connecticut General Statutes section 52-577 ("section 52-577") states: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." C.G.S. § 52-577. Section 52-577 is a statute of repose, which means that the applicable period for the statute of limitations begins on "the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." <u>Byrne v. Burke</u>, 112 Conn. App. 262, 272 (2009); <u>see</u> <u>Kidder v. Read</u>, 150 Conn. App. 720, 726–27 (2014).

Blue Ribbon argues that, because Bailey's purchase of the property took place in 2006, any claims arising out of the use of the appraisal in connection with that purchase are time-barred. <u>See</u> Memorandum of Law in Support of Blue Ribbon's Motion to Dismiss ("Blue Ribbon's Mem.") (Doc. No. 44-1) at 4–6.

Bailey argues that the statute of limitations defense is a "special defense," which "should not be used as a vehicle to dismiss [Bailey]'s claim." Response to Blue Ribbon at 4. However, claims may be dismissed at the pleading stage "[w]here the dates in a complaint show that an action is barred by a statute of limitations." <u>Est. of Axelrod</u>, 476 F. Supp. 2d at 203 (quoting <u>Ghartey v. St. John's Queens Hosp.</u>, 869 F.2d 160, 162 (2d

Cir. 1989); see Velez v. City of New London, 903 F. Supp. 286, 289 (D. Conn. 1995) ("Although the statute of limitations defense is usually raised in a responsive pleading, the defense may be raised in a motion to dismiss if the running of the statute is apparent from the fact of the complaint." (quoting Ledesma v. Jack Steward Produce, Inc., 816 F.2d 482, 484 n.1 (9th Cir. 1987))).

Bailey also argues that the court should not look to the date of the appraisal or the date of the purchase of the property, but should "postpone" the statute of limitations period until January 2017 "which is when [Bailey] discovered he was wronged by the Defendant Blue Ribbon."[8] Plaintiff's Response to Blue Ribbon's Mot. ("Response to Blue Ribbon") (Doc. No. 48) at 4. As aforementioned, section 52-577 is a statute of repose, meaning that the date at which an injury is discovered is irrelevant. See Byrne, 112 Conn. App. at 272. However, the date on which Bailey discovered fraud could be relevant to the extent that Bailey is attempting to raise a tolling defense of fraudulent concealment, which, in Connecticut, is governed by Connecticut General Statutes section 52-595 ("section 52-595"). See Kidder, 150 Conn. App. at 727 (recognizing fraudulent concealment as a basis for tolling the section 52-577 statute of limitations period).

---

[8] Bailey's argument that he first learned about problems with the appraisal in January 2017 is contradicted by one of his own exhibits. As noted in the Facts section, see supra Section III, in his first Motion to Open, filed in November 2014, Bailey raised the argument that Bayview "provided false appraisal documents." Exh. 1, 3d Am. Compl. at 2. "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 146–47 (2d Cir. 2011). In fact, this allegation is contradicted even within the Third Amended Complaint itself. See 3d Am. Compl. at 6 ("On belief and information obtained by the Plaintiff this past November 2016, the appraisal done for the Plaintiff in order to obtain the loan from [Interbay] was never done for the Plaintiff but instead was done for the previous owner of the building, [Moye], one year earlier in violation of the law." (emphasis added)). However, because Bailey's claim fails on independent grounds, the court need not resolve the apparent contradiction in Bailey's Third Amended Complaint and exhibits thereto, or whether discovery in 2014 would be a basis to toll the statute of limitations.

fraudulent concealment, like all claims of fraud, must be pled according to the heightened pleading standard in Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). See Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983) ("Appellants' generalized and conclusory allegations of fraudulent concealment do not satisfy the requirements of [Rule] 9(b)."); In re Publication Paper Antitrust Litig., No. 3:04-MD-1631(SRU), 2005 WL 2175139, at *3 (D. Conn. Sept. 7, 2005) ("A claim that the statute of limitations should be tolled because of fraud is, obviously, a claim of fraud, and therefore the circumstances constituting that fraud must meet Rule 9(b)'s requirements.").  In order to plead fraudulent concealment pursuant to section 52-595, Bailey must allege that Blue Ribbon had actual awareness of facts necessary to establish fraud, that Blue Ribbon intentionally concealed those facts from Bailey,[9] and that this concealment was done for the purpose of delaying Bailey from filing a complaint.  See Gibbons v. NER Holdings, Inc., 983 F. Supp. 310, 316 (D. Conn. 1997) (discussing elements of fraudulent concealment pursuant to section 52-595); OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d 490, 504 (D. Conn. 2007) ("[B]ecause [the plaintiff]'s claims are time-barred on the face of its own complaint, [the plaintiff] has the burden of pleading facts sufficient to establish that the statutes of limitations should be tolled.").

---

[9] The court notes that, in the absence of allegations that the defendant affirmatively concealed information, courts have also permitted fraudulent concealment defenses on a theory that the information was "self-concealing."  See, e.g., AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc., No. 3:10-CV-1539 (JAM), 2014 WL 7270160, at *13 (D. Conn. Dec. 18, 2014).  In order for an action to be self-concealing, the violation must be, "by its nature, knowable" and "the plaintiff still must have exercised reasonable diligence to discover the cause of action under the circumstances."  Id.  Bailey has made no allegations in his Third Amended Complaint that the appraisal-related fraud was self-concealing.  To the contrary, he alleges that "[s]oon after the closing, [Bailey] discovered that the building needed a lot of work and was not up to code."  3d Am. Compl. at 4.  There is no basis in the Third Amended Complaint to infer that the alleged fraud with the appraisal was self-concealing.

Bailey has not alleged facts adequate to plead fraudulent concealment. As noted above, see supra Section IV(A), Bailey has only alleged that Blue Ribbon "represented" that it conducted an appraisal, which appraisal was conducted for Moye a year before Bailey purchased the property. 3d Am. Compl. at 3, 6. Bailey has not alleged that Blue Ribbon had actual awareness of facts necessary to establish fraud or that Blue Ribbon intentionally concealed those facts, much less that they did so to prevent Bailey from filing a complaint. He certainly has not stated fraudulent concealment "with particularity" as Rule 9(b) requires. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

In sum, the court concludes that Bailey's claims against Blue Ribbon are barred by the statute of limitations, as the running of the statute is apparent from the face of Bailey's Third Amended Complaint, and he has failed to adequately plead a basis for tolling the limitations period.

2. Connecticut General Statutes Section 36a-755(d)

In the alternative, Blue Ribbon argues that Connecticut General Statutes section 36a-755(d) ("section 36a-755(d)") protects Blue Ribbon from liability against Bailey because Bailey "does not allege that he contracted with or had any contact at all with Blue Ribbon when the appraisal was completed." Blue Ribbon's Mem. at 7.

Section 36a-755(d) provides, in relevant part, as follows:

> Any person who prepares [an] appraisal report shall not be liable to any person with whom the preparer has not contracted to make such appraisal report for opinions or facts stated in or omitted from such appraisal report, unless such statement or omission results from intentional misrepresentation.

C.G.S. § 36a-755(d).

Bailey does not argue that he qualifies as a person with whom Blue Ribbon contracted. Instead, Bailey relies on the final clause of section 36a-755(d), arguing that he "alleged fraud and misrepresentation" against Blue Ribbon and, therefore, Blue Ribbon is not protected by section 36a-755(d). Response to Blue Ribbon at 4. Blue Ribbon argues, to the contrary, that Bailey "does not sufficiently specify any intentional misrepresentation on the part of Blue Ribbon . . . , instead baldly characterizing the appraisal as 'fake.'" Blue Ribbon's Mem. at 8.

The court agrees with Blue Ribbon that Bailey has failed to adequately allege "intentional misrepresentation" by Blue Ribbon that would permit liability. C.G.S. § 36a-755(d). As analyzed above, see supra Section IV(A)(1), the only specific facts that Bailey has alleged regarding Blue Ribbon is that Blue Ribbon represented that it conducted an appraisal and that the appraisal occurred a year prior, when Moye purchased the property. These allegations are insufficient to create a plausible inference that Blue Ribbon intentionally misrepresented anything in the appraisal report. Furthermore, Bailey has not alleged that he had contact with Blue Ribbon at any time, before or after the property sale. The only direct contact that Bailey alleges with respect to anyone even related to Blue Ribbon is Bailey's vague allegation that "the wife of the owner of Blue Ribbon" told him that Blue Ribbon did not appraise the property at the time of Bailey's purchase.[10] This allegation does not raise the inference that the appraisal report itself contains intentional misrepresentations, but rather that it would be

---

[10] The court notes that Bailey's specific allegation is that he learned that the appraisal "never really took place." 3d Am. Compl. at 3. In the context of Bailey's allegation that the appraisal "was never done for [Bailey] but instead was done for the previous owner of the building, [Moye]," the court construes Bailey's allegation that the appraisal "never really took place" as an allegation that the appraisal did not take place at the time that Bailey purchased the property. Id. at 6; see also id. at 11 (alleging that Interbay and the Bayview defendants "us[ed] an old appraisal").

inaccurate to describe the appraisal as one conducted in close temporal proximity to Bailey's purchase. There are no allegations in the Third Amended Complaint that Blue Ribbon—or anyone, for that matter—made such a representation. Therefore, Bailey has failed to adequately allege that Blue Ribbon made intentional misrepresentations in an appraisal report and Bailey's claims against Blue Ribbon are barred by section 36a-755(d).

The court concludes that the statute of limitations and section 36a-755(d) are independently sufficient bases to find that Bailey's claims against Blue Ribbon are barred. Therefore, Blue Ribbon's Motion to Dismiss (Doc. No. 44) is granted.

      B.    <u>Claims Against Interbay and the Bayview Defendants</u>

Bailey alleges three claims against Interbay and the Bayview defendants: fraud relating to the appraisal (Count Four), civil conspiracy related to the alleged appraisal fraud (Count Five), and violations of CUTPA (Count Six). <u>See</u> 3d Am. Compl. at 8–12. Bailey also alleges an additional fraud claim against the Bayview defendants arising out of the foreclosure action in Connecticut Superior Court (Count Seven). <u>Id.</u> at 12–16. Although the Third Amended Complaint is somewhat muddled on this issue, the court construes Bailey's CUTPA Count, Count Six, to allege three separate violations of CUTPA based on the following: (1) the use of an old appraisal, <u>see id.</u> at 11 ¶ 59; (2) failure to honor an oral contract to modify Bailey's loan, <u>see id.</u> at 11 ¶ 58; and (3) communications made by counsel for Bayview Loan Servicing, LLC, in the course of the foreclosure action, which communications are the basis for Count Seven, <u>id.</u> at 11 ¶ 64 (incorporating the factual allegations of Count Seven into the CUTPA Count).

As a threshold matter, the court notes that the allegations in Count Seven, which are incorporated in Count Six as a CUTPA violation, relate solely to communications

made by counsel for Bayview Loan Servicing, LLC, during the foreclosure action.  <u>See</u>

3d Am. Compl. at 10–16.  Nevertheless, Bailey has alleged Count Seven against both

Bayview Loan Servicing, LLC, and Bayview Asset Management, LLC, but does not

explain why Bayview Asset Management, LLC—who was not a party to the foreclosure

action—is liable for those communications, or even why Bayview Loan Servicing, LLC,

is liable for allegedly fraudulent statements made by its counsel.  <u>Id.</u>  Compounding the

confusion in Count Seven, the factual allegations in Count Seven are incorporated as

one of the three CUTPA claims in Count Six, which is alleged against Interbay as well

as the Bayview defendants.  <u>Id.</u>  The court construes the Third Amended Complaint to

allege that Interbay and the Bayview defendants are in privity with one another and,

therefore, are all liable for the statements of counsel for Bayview Loan Servicing, LLC.

<u>See</u> <u>infra</u> note 11 (discussing privity).

  In their Motion to Dismiss, Interbay and the Bayview defendants argue that this

court lacks jurisdiction to hear Bailey's claims because they are entirely barred by the

<u>Rooker-Feldman</u> doctrine.  <u>See</u> Memorandum of Law in Support of Interbay's Motion to

Dismiss ("Interbay's Mem.") (Doc. No. 47-1) at 8–10.  Interbay and the Bayview

defendants also argue that Bailey's claims are barred by res judicata and collateral

estoppel, <u>id.</u> at 10–12, and, in the alternative, that each of Bailey's claims fails

independently as insufficiently pled, time-barred, or protected by the litigation privilege

doctrine, <u>id.</u> at 13–22.  Because subject matter jurisdiction challenges must be

considered before challenges raised on other grounds, <u>see</u> <u>Can v. United States</u>, 14

F.3d 160, 162 n.1 (2d Cir. 1994), the court first considers the <u>Rooker-Feldman</u>

argument.

1. <u>Rooker-Feldman</u>

The <u>Rooker-Feldman</u> doctrine is named for two Supreme Court cases, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983). The <u>Rooker-Feldman</u> doctrine precludes federal district court jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Inds. Corp.</u>, 544 U.S. 280, 284 (2005). The Second Circuit has established the following four factors for determining whether dismissal pursuant to Rule 12(b)(1) is proper pursuant to the Rooker-Feldman doctrine:

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by a state court judgment"; (3) the plaintiff "invite[s] . . . review and rejection of that judgment;" and (4) the state judgment was "rendered before the district court proceedings commenced."

<u>Vossbrinck v. Accredited Home Lenders, Inc.</u>, 773 F.3d 423, 426 (2d Cir. 2014) (quoting <u>Hoblock v. Albany Cnty. Bd. of Elecs.</u>, 422 F.3d 77, 85 (2d Cir. 2005)).

In response to the <u>Rooker-Feldman</u> argument raised by Interbay and the Bayview defendants, Bailey argues that he "had no opportunity to present the facts he is seeking to adjudicate in this action" because the foreclosure action was resolved by default. Objection to Motion to Dismiss by Interbay and the Bayview Defendants ("Response to Interbay") (Doc. No. 54) at 4. However, "the <u>Rooker-Feldman</u> doctrine applies equally to state court judgments obtained by default." <u>Andrews v. Citimortgage, Inc.</u>, No. 14-CV-1534 (JS) (AKT), 2015 WL 1509511, at *5 (E.D.N.Y. Mar. 31, 2015); <u>see</u> <u>Ballyhighlands, Ltd. v. Bruns</u>, 182 F.3d 898, 1999 WL 377098, at *2 (Table) (2d Cir.

1999) (unpublished opinion) ("Rooker-Feldman applies to default judgments just as it does to other types of judgments.").

Bailey also asserts that he "is alleging fraud and deception as the basis for the court entering judgment" and, therefore, Rooker-Feldman does not apply. Response to Interbay at 5. However, Rooker-Feldman can still apply to block claims "that the judgment was void because it was obtained through a fraudulent scheme to interfere with the judicial process." Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co., 664 Fed. App'x 20, 21 (2d Cir. 2016) (summary order); see Vossbrinck, 773 F.3d at 427 ("To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, Rooker-Feldman bars Vossbrinck's claim.").

While the arguments that Bailey does raise are unavailing, however, an issue that he does not raise defeats the defendants' Rooker-Feldman argument in this case. While three of the four Rooker-Feldman factors are easily satisfied, the court concludes that the third factor—namely, that Bailey is requesting "review and rejection of [the foreclosure] judgment"—is not. Id. at 426. In his Third Amended Complaint, Bailey does not ask this court to vacate the foreclosure judgment or return the property to him. See 3d Am. Compl. at 18; cf. Vossbrinck, 773 F.3d at 427. Instead, Bailey requests money damages and attorney's fees. See Vossbrinck, 773 F.3d at 427 (claims seeking damages for injuries the plaintiff suffered from an alleged fraud are not barred by Rooker-Feldman because they "do[ ] not require the federal court to sit in review of the state court judgment"); Worthy-Pugh, 664 Fed. App'x at 21 ("The Rooker-Feldman doctrine does not prevent a district court from reviewing a claim for damages stemming

16

from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment.").  Because Bailey does not ask the court to review and reject the foreclosure judgment, Rooker-Feldman does not bar this court from having jurisdiction over Bailey's claims.

## 2. Res Judicata

The doctrine of res judicata, alternatively called claim preclusion, provides that "a final judgment on the merits bars a subsequent action between the same parties over the same cause of action."  Channer v. DHS, 527 F.3d 275, 279 (2d Cir. 2008).  When applying the doctrine of res judicata, "[a] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  O'Connor v. Pierson, 568 F.3d 64, 69 (2d Cir. 2009); see AmBase Corp. v. City Investing Co. Liquidating Tr., 326 F.3d 63, 72 (2003) ("Where there is a final state court judgment, a federal court looks to that state's rules of res judicata to determine the preclusive effect of that judgment.").  In Connecticut courts, "a prior action bars subsequent litigation between the same parties[11] arising from the same subject matter, provided the precluded party had an

---

[11] As to the requirement that the parties to the present action be the same, the court notes that Bayview Asset Management, LLC, and Interbay were not parties to the foreclosure action.  However, res judicata may still apply if the new parties are in "privity" with one or more of the parties to the prior action. See Wheeler v. Beachcroft, LLC, 320 Conn. 146, 166 (2016).  Privity is determined by analyzing the "functional relationships of the parties" to determine whether "there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion."  Mazziotti v. Allstate Ins. Co., 240 Conn. 799, 814 (1997).

adequate opportunity to litigate in the prior proceeding." <u>Worthy-Pugh</u>, 664 Fed. App'x at 22. A party lacks an adequate opportunity to litigate if "the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion." <u>O'Connor</u>, 568 F.3d at 71 (quoting <u>Conn. Nat'l Bank v. Rytman</u>, 241 Conn. 24, 44 (1997)).

Bailey raises the same argument as to <u>res judicata</u> that he raised as to <u>Rooker-Feldman</u>, namely that, because the judgment entered against him in the foreclosure action was a default judgment, res judicata "do[es] not preclude [Bailey]'s suit from going forward." Response to Interbay at 5. However, the Connecticut Supreme Court has held that a default judgment is a judgment "on the merits" for the purposes of res judicata. <u>See</u> <u>Slattery v. Maykut</u>, 176 Conn. 147, 157 (1978) (holding that a default judgment "operates as res judicata . . . and is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as when rendered after answer and complete trial").

Bailey also raises the related argument that, because default judgment entered against him in the foreclosure action, none of his claims were adjudicated. Response to Interbay at 5 ("The fact that [Bailey] filed motions in an attempt to have his facts adjudicated does not mean the facts were adjudicated as the judgment was not based on those facts."). Interbay and the Bayview defendants argue, however, that <u>res</u>

_____

The Third Amended Complaint clearly alleges that Interbay and the Bayview defendants are doing business as a single entity. <u>See</u> 3d Am. Compl. at 2 ¶¶ 1–4. In addition, Interbay and the Bayview defendants assert that they are in privity with one another in their Memorandum, and Bailey does not contest this assertion in his Response. <u>See</u> Interbay's Mem. at 12. Therefore, the court concludes that Interbay and the Bayview defendants are in privity as required for res judicata to apply to all three of those defendants.

judicata applies to all issues "that were <u>or could have been</u> raised in [the underlying] action." Interbay's Mem. at 10 (quoting <u>Coleman v. Blanchette</u>, No. 3:11-CV-1632 (WIG), 2012 WL 3822022, at *5 (D. Conn. Sept. 4, 2012) (emphasis added)). As this is an accurate statement of the law in Connecticut, the question for this court is what claims may be raised by a defendant in a foreclosure action in Connecticut Superior Court.

"Whether a claim that was not raised in the previous action could have been raised therein depends in part on whether the facts essential to support the second were present in the first." <u>Coleman</u>, 2012 WL 3822022, at *5 (quoting <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 287 (2d Cir. 2002)). In addition, "res judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action." <u>Marvel Characters, Inc.</u>, 310 F.3d at 287.

With respect to the claims alleged in Counts Four and Five, fraud and civil conspiracy relating to the appraisal, as well as the CUTPA claim based on the same facts in Count Six, the court concludes that res judicata does not bar relief in this court because the Superior Court judge likely would not have had jurisdiction to hear and decide those claims. The same is true of Bailey's allegations in Count Seven, which are also the basis for one of Bailey's CUTPA claims in Count Six, related to communications by counsel for Bayview Servicing, LLC, during the foreclosure action. The court reaches this conclusion because Connecticut narrowly circumscribes the special defenses and counterclaims that may be raised in foreclosure actions to those that relate to the "making, validity, or enforcement of the note or mortgage," with limited

exceptions.  <u>U.S. Bank Nat'l Assoc. v. Blowers</u>, 177 Conn. App. 622, 632 (2017)

(holding that defenses and counterclaims based on postdefault mediation and loan

modification negotiations lacked a "sufficient nexus to the making, validity, or

enforcement of the note or mortgage").  Although judges in foreclosure actions may

make exceptions to this requirement "where traditional notions of equity would not be

served by its strict application," the Connecticut Appellate Court has cautioned against a

broadened standard that would "unnecessarily convolute and delay the foreclosure

process."  <u>Id.</u> at 633–34.  Based on Connecticut's conservative approach to special

defenses and counterclaims in foreclosure actions, the court concludes that the

Superior Court could not have had jurisdiction to hear and decide most of Bailey's

claims or, at a minimum, "would clearly have declined to exercise it as a matter of

discretion."  <u>O'Connor</u>, 568 F.3d at 71.

However, with respect to Bailey's remaining CUTPA claim, namely that Bayview

Loan Servicing, LLC, entered into a loan modification agreement with Bailey but did not

honor it, <u>see</u> 3d Am. Compl. at 4 ¶¶ 19–29, 11 ¶ 54–55, 58, the court concludes that

that claim is barred by res judicata because it could have been raised, as a defense or a

counterclaim, in the foreclosure action.  The Connecticut Court of Appeals has strongly

suggested that, if a binding loan modification is reached by the parties, the fact of that

binding modification may properly be raised as a challenge to the "enforcement" of the

mortgage or note.  <u>U.S. Bank Nat'l Assoc.</u>, 177 Conn. App. at 635–36 ("[T]he plaintiff's

alleged conduct does not relate to the enforcement of the note or mortgage because no

binding modification was reached between the parties that rendered the original note

and mortgage unenforceable."); <u>see also</u> Conn. Practice Book § 10-10 ("In any action

for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . .").  Because Bailey could have raised his claim related to the loan modification as a special defense, a CUTPA counterclaim, or both in the foreclosure action, res judicata bars him from raising that claim in this action.

For the foregoing reasons, the court grants Interbay and the Bayview defendants' Motion to Dismiss with respect to the loan modification claim in Count Six.

### 3.  Collateral Estoppel

Interbay and the Bayview defendants argue that all of Bailey's claims are barred by collateral estoppel.  Under collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Allen v. McCurry, 449 U.S. 90, 94 (1980).

Most of the claims that Bailey raises, including the claims related to the appraisal and the conduct of Bayview Loan Servicing, LLC, in the foreclosure action were not, however, "necessary" to the judgment of the Superior Court judge.  Although Interbay and the Bayview defendants persuasively argue that Bailey already raised the claims he alleges in this action in the foreclosure action, those claims are not collaterally estopped unless they were "necessarily determined in the first trial."  Ventres v. Goodspeed Airport, LLC, 301 Conn. 194, 206 (2011).  It is undisputed that all of Bailey's claims were raised in Motions to Open filed post-judgment.  See Response to Interbay at 5 ("The fact that the Plaintiff filed motions in an attempt to have his facts adjudicated does

not mean the facts were adjudicated . . . .").  "Because opening a judgment is a matter of discretion, the trial court [is] not required to open the judgment to consider a claim not previously raised."  Chapman Lumber, Inc. v. Tager, 288 Conn. 69, 94 (2008) (quoting Mazziotti v. Allstate Ins. Co., 240 Conn. 799, 809 (1997).  The defendants do not argue that the Superior Court judge denied any of Bailey's Motions to Open based on factual findings that would collaterally estop his claims here.  See Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 719–20 (1993), abrogated on other grounds by Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 260 (2002) (concluding that issues were not precluded where trial court "did not . . . indicate on what basis it denied the plaintiff's motion" and it was, therefore, unclear whether the plaintiff "was afforded a full and fair opportunity to explore the factual issues she later sought to litigate").  Therefore, the court concludes that Bailey's claims are not barred by the denial of his Motions to Open.

However, as discussed in the res judicata context, Connecticut treats default judgments as decisions "on the merits" and gives them the same preclusive effect that any other judgment on the merits is entitled to with respect to "whatever is essential to support the judgment."  Slattery, 176 Conn. at 157.  Although collateral estoppel is not appropriate if the party who is precluded lacked an "adequate opportunity to litigate the matter in the earlier proceeding," the fact that a judgment enters by default does not necessarily mean that such an opportunity was lacking.  See Jackson, 225 Conn. at 718 (holding that there are "some circumstances where it would be appropriate to give issue preclusive effect to a default judgment" where "the party had an 'adequate opportunity to litigate the matter in the earlier proceeding'" (quoting State v. Ellis, 197 Conn. 436, 464 n.22 (1985))).

Of the claims that Bailey raises, the only one that requires adjudication of facts that are necessary to the judgment is his claim that he and Bayview Loan Servicing, LLC, entered into a binding agreement to modify his loan, which agreement Bayview Loan Servicing, LLC, did not honor.  In his Third Amended Complaint, Bailey alleges this claim as a CUTPA violation.[12]  <u>See</u> 3d Am. Compl. at 11 ¶ 58.  The court has already concluded that this claim is barred by res judicata.  <u>See</u> <u>supra</u> Section IV(B)(2). However, for the sake of efficiency, the court reaches the question of whether it is also barred by collateral estoppel.  In a foreclosure action, the validity of the mortgage or note is essential to support the judgment.  Therefore, if the court found that Bailey had an "adequate opportunity" to litigate the validity of the mortgage, then his CUTPA claim on that basis would appropriately be collaterally estopped.

It is a close question whether Bailey had an "adequate opportunity" to litigate the validity of the mortgage.  As the court has already concluded in the res judicata analysis above, <u>see</u> <u>supra</u> Section IV(B)(2), Bailey could have raised challenges to the validity or enforcement of the mortgage as a defense or counterclaim in the foreclosure action. However, collateral estoppel should not be applied unless the party against whom it is raised was "afforded a full and fair opportunity to explore the factual issues [he] later [seeks] to litigate."  <u>Jackson</u>, 225 Conn. at 719–20.

Based on the allegations in the Third Amended Complaint, the court concludes that Bailey did not receive that opportunity in the foreclosure action.  Bailey has alleged that he did not receive actual notice of the foreclosure action until November 18, 2014,

---

[12] The facts alleged in support of this CUTPA claim are also the basis for Bailey's proposed Count Ten, a claim of breach of oral contract, which he has moved the court for permission to add.  <u>See</u> Motion to Amend; <u>see also</u> <u>infra</u> Section V.

after the judgment of strict foreclosure had entered against him.  See supra Section III;

3d Am. Compl. at 12–13.  Although the Superior Court judge necessarily concluded that

notice was legally sufficient, that is not equivalent to a finding that Bailey received actual

notice of the foreclosure action because actual notice is not a requirement for proper

service.  See C.G.S. § 52-59b(c) (service is proper for non-residents who own real

property if the Secretary of State of Connecticut is served and the defendant is sent

process at his last known address via certified or registered mail).  In other words, the

court does not dispute the Superior Court's judgment that the court had personal

jurisdiction over Bailey.  Rather, the court follows the guidance of the Connecticut

Supreme Court that collateral estoppel "must be set in a practical frame and viewed with

an eye to all the circumstances of the proceedings."  Jackson, 225 Conn. at 717

(quoting Sealfon v. United States, 332 U.S. 575, 579 (1948).  In that light, the court

cannot conclude that Bailey had the "full and fair opportunity" to litigate the facts

underlying his loan modification claim sufficient for collateral estoppel to apply.  See In

re Roberti, 183 B.R. 991, 1002–03 (Bankr. D. Conn. 1995) (concluding that proper

service was not sufficient to provide a "full and fair opportunity to litigate" where the

plaintiff alleged she had not received actual notice of the underlying action).

    However, although the court concludes that collateral estoppel does not apply to

bar Bailey's CUTPA claim related to the alleged loan modification agreement (or any of

his other claims), the court notes that it has already concluded that the loan modification

claim is barred by res judicata.

4.  Statute of Limitations

In their Motion to Dismiss, Interbay and the Bayview defendants argue that Bailey's claims related to the appraisal—fraud in Count Four, civil conspiracy in Count Five, and one of the CUTPA claims in Count Six—are time-barred because the appraisal was "provided to [Bailey] before he completed the purchase of the [p]roperty, or at the latest at the real estate closing on March 6, 2006."  Interbay's Mem. at 15 (discussing fraud claim); see id. at 17 (discussing civil conspiracy claim); id. at 20 (discussing CUTPA claim).

With respect to the fraud and civil conspiracy claims, the court has already discussed the relevant law in its analysis of those claims as alleged against Blue Ribbon, and incorporates that analysis by reference here.  See supra Section IV(A)(1). As the court concluded above, Bailey's claims of fraud and civil conspiracy related to the appraisal are time-barred unless the defendants engaged in fraudulent concealment such that the limitations period was tolled.  Id.  fraudulent concealment must be pled according to the heightened pleading standard in Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  See Armstrong, 699 F.2d at 88.  In order to plead fraudulent concealment against Interbay and the Bayview defendants, Bailey must allege that they had actual awareness of facts necessary to establish fraud, that they intentionally concealed those facts from Bailey, and that this concealment was done for the purpose of delaying Bailey from filing a complaint.  See Gibbons, 983 F. Supp. at 316; OBG Tech. Servs., Inc., 503 F. Supp. 2d at 504 ("[B]ecause [the plaintiff]'s claims are time-barred on the face of its own complaint, [the plaintiff] has the burden of pleading facts sufficient to establish that the statutes of limitations should be tolled."); see supra Section IV(A)(1).

Bailey alleges that Bayview told Bailey that "both the building appraisal was perfect for the loan and that the building inspection report shows that the building was in good repair, up to Connecticut state building codes." 3d Am. Compl. at 4 ¶ 15. He further alleges, "The Defendants all concocted a plan to sell the Plaintiff a building which condition was misrepresented" including by "the use of an appraisal that was done for the previous [owner] Mr. Kelly." Id. at 6 ¶ 33. Bailey does not allege that Interbay or the Bayview defendants took any action after the sale was completed to conceal the alleged fraud related to the appraisal from him, much less than they did so in order to delay his filing a claim against them. Absent particularized allegations sufficient to plead fraudulent concealment, there is no basis to toll the statute of limitations on the fraud and civil conspiracy claims as alleged against Interbay and the Bayview defendants. These claims are, therefore, time-barred.

As to the claim alleged on the same facts in the CUTPA Count, Count Six, CUTPA contains its own statute of limitations provision, Connecticut General Statutes section 42-110g(f) ("section 42-110g(f)"), which establishes a three year statute of limitations for CUTPA violations. See C.G.S. § 42-110g(f) ("An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."). The Connecticut Supreme Court has held that section 42-110g(f), like the statute of limitations provision for tort actions (section 52-577), is a statute of repose, meaning that the relevant date for the onset of the limitations period is the date upon which the act complained of occurred, not when the injury was discovered. See Fichera v. Mine Hill Corp., 207 Conn. 204, 213 (1988) ("[E]ven where the wrongful act could not reasonably have been discovered until after the statute had run, any action seeking

damages for such an 'act or omission' was barred.").  Therefore, for the same reasons the court has concluded that section 52-577 bars relief on the tort claims, section 42-110g(f) bars relief on Bailey's CUTPA claim based on the same facts.

For the reasons stated above, the court grants Interbay and the Bayview defendants' Motion to Dismiss (Doc. No. 47) with respect to Counts Four and Five and for the CUTPA claim based on the appraisal.

### 5.  Litigation Privilege Doctrine

 In his Third Amended Complaint, Bailey alleges a claim of fraud against the Bayview defendants for various statements made by Bayview Loan Servicing, LLC, either to the court or to Bailey in the course of the foreclosure litigation.  <u>See</u> 3d Am. Compl. at 12–16.  Bailey also incorporates these allegations as a claim under CUTPA in Count Six.  <u>See</u> <u>id.</u> at 12 ¶ 64 ("Paragraph 1–29 of count VII fraud count are hereby incorporated and made paragraph 64–93 of this count.").

The facts alleged to support this claim are as follows:  A judgment of strict foreclosure entered against Bailey on October 27, 2014, establishing law days of November 24, 2014.[13]  <u>See</u> <u>id.</u> at 13.  Bailey did not receive notice of this judgment until November 18, 2014.  <u>See</u> <u>id.</u>  On November 18, 2014, he received a letter from attorneys for Bayview instructing him to file an appearance "if he wanted to save his equity in the home or to call the Bayview's attorney's law firm."  <u>Id.</u>; <u>see</u> Exh. H., 3d Am. Compl. (Doc. No. 43).  On or about November 20, 2014, Bailey filed an appearance and

---

[13] In many of the allegations in Count Seven of the Third Amended Complaint, Bailey states that events occurred in 2017, not 2014.  Given that it is undisputed that Bayview Loan Servicing, LLC, initiated the foreclosure action in August 2014, <u>see</u> 3d Am. Compl. at 4, and based on the public records in the foreclosure action of which this court has taken judicial notice, <u>see</u> <u>supra</u> note 2, the court concludes that statements alleging actions in 2017 were made in error.

a Motion to Open in the foreclosure action.  See 3d Am. Compl. at 13–14.  He also called counsel for Bayview, who advised him to file an appearance and a motion to open and told him "everything would be fine."  Id. at 14.  However, the Connecticut Superior Court judge denied Bailey's Motion to Open and vested the property rights in Bayview Loan Servicing, LLC.

On the basis of these factual allegations, Bailey asserts that the Bayview defendants are guilty of fraud (Count Seven) and that Interbay and the Bayview defendants violated CUTPA (Count Six).  Interbay and the Bayview defendants assert that the litigation privilege doctrine shields them from liability on either the fraud Count or the CUTPA Count.  See Interbay's Mem. at 16–17; id. at 21.  The litigation privilege doctrine states that "communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy."  Hopkins v. O'Connor, 282 Conn. 821, 830–31 (2007).  In addition to statements made during judicial proceedings, the Supreme Court of Connecticut has extended the litigation privilege to "those preparatory communications that may be directed to the goal of the proceeding."  Id. at 832; see also Alexandru v. Dowd, 79 Conn. App. 434, 438 ("The [litigation] privilege applies also to statements made in pleadings or other documents prepared in connection with a court proceeding."), cert. denied, 266 Conn. 925 (2003).  The Connecticut Supreme Court has explained that one reason for the absolute protection provided to attorneys for communications made in connection with litigation is that, if the privilege were abrogated that abrogation "also would apply to the claims of pro se litigants who do not

understand the boundaries of the adversarial process and thus could give rise to much unnecessary and harassing litigation."  Simms v. Seaman, 308 Conn. 523, 568 (2013).

The litigation privilege doctrine protects against claims of fraud and CUTPA.  See id. at 569 (litigation privilege doctrine shields against fraud claims); Tyler v. Totaian, 164 Conn. App. 82, 93–94 (2016) ("The same policy of ensuring candor in the judicial process leads us to conclude that the plaintiff's . . . claims based upon alleged violations of CUTPA are also barred by absolute immunity.").  Furthermore, the litigation privilege may be invoked by party opponents.  See Tyler, 164 Conn. App. at 92 ("[T]he underlying policy and history of the privilege lead us to conclude that it extends to bar claims of fraud against a party opponent."); see also Simms, 308 Conn. at 536–57 (discussing the history of the litigation privilege doctrine and noting that it has been extended to "judges, counsel and witnesses" (quoting Blakeslee & Sons v. Carroll, 64 Conn. 223, 232 (1894))).

Bailey argues that the litigation privilege doctrine does not protect the defendants because it does not extend to "specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation."  Response to Interbay at 7 (quoting Omotosho v. Freeman Inv. & Loan, 136 F. Supp. 3d 235, 250 (D. Conn. 2016)).  While the court does not dispute this statement of law, Bailey has provided neither argument nor authority that places the facts alleged in this case within the category of cases involving "specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation."  Bailey argues that the letter he received from counsel for Bayview Loan Servicing, LLC, was "intended to mislead the Plaintiff into just filing an appearance" and should have informed him to "seek[ ] legal

assistance."[14]  Response to Interbay at 7.  However, this correspondence was clearly "pertinent to the subject of the controversy."  Hopkins, 282 Conn. at 830–31. Furthermore, the letter itself, which was attached as an exhibit to the Third Amended Complaint, states that it was "sent at the direction of the Superior Court, Judicial District of New Haven at Meriden," which Bailey does not dispute.  Exh. H, 3d Am. Compl. Therefore, the court cannot fathom any basis upon which it could find this correspondence is outside of the normal contemplation of private litigation.

For the foregoing reasons, the court concludes that Bailey's claim of fraud and CUTPA violation on the basis of communications made by counsel for Bayview Loan Servicing, LLC, in the course of the foreclosure litigation are barred by the litigation privilege doctrine.  Therefore, the Motion to Dismiss Counts Six and Seven is granted.

### 6.  Additional Arguments

In addition to the arguments analyzed above, Interbay and the Bayview defendants also argue that Bailey fails to plead his fraud claims with sufficient particularity, fails to allege the necessary elements of a civil conspiracy, and fails to allege conduct that violates CUTPA.  See Interbay's Mem. at 13–21.  Because the court has already dismissed all of Bailey's claims on alternative grounds, the court does not reach the merits of these alternative bases to dismiss.  However, the court notes that, given it will allow Bailey the right to replead one more time, any claims of fraud, including a fraudulent concealment defense to the statute of limitations, must "state with

---

[14] The court notes that the letter—which Bailey attached as an exhibit to his Third Amended Complaint—states, "You should either file your own appearance or have an attorney file one on your behalf in order to protect you [sic] interest in the equity."  Exh. H, 3d Am. Compl. (Doc. No. 43) (emphasis added).  No reasonable factfinder could infer from this language that such a statement was intended to mislead Bailey into representing himself.

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see

Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 403 (2d Cir. 2015)

("[Rule 9(b)] requires that the plaintiff (1) detail the statements (or omissions) that the

plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the

statements (or omissions) were made, and (4) explain why the statements (or

omissions) are fraudulent." (quoting Eternity Global Master Fund Ltd. v. Morgan Guar.

Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004))).

## V.    MOTION TO AMEND THIRD AMENDED COMPLAINT

On March 2, 2018, Bailey filed a Motion to Amend the Third Amended Complaint

to add a claim of breach of oral contract.  See Motion to Amend ("Mot. to Am.") (Doc.

No. 60).  Specifically, Bailey requests leave to amend paragraph 39 on page 7 of the

Third Amended Complaint to read as follows:

> The Defendants engaged in the concept of "DUAL
> TRACKING" and as a result of the Bayview Defendants [sic]
> breach of the oral agreement, the Plaintiff incurred damages
> and lost his property.

Id. at 1.[15]  He also requests leave to amend the prayer for relief to include a request that

the court "[e]nforce the Oral Contract of the parties."  Id.

The court concludes that permitting the amendment that Bailey requests would

be futile.  First, Bailey's proposed addition to the request for relief is, in effect, a request

that this court "review and reject the judgment" of the Connecticut Superior Court in the

---

[15] Paragraph 39 of the Third Amended Complaint currently reads:

> The Defendants engaged in the concept of "DUAL TRACKING" which is
> when the banks' representatives tell the home [sic] everything is going to
> be [sic] while the attorney in the court case proceed [sic] to take legal
> possession of the property.  That is exactly what occurred in this case.

3d Am. Compl. at 7 ¶ 39.

foreclosure action, because this court could not enforce the alleged oral contract without

vacating the foreclosure judgment.  <u>Vossbrinck</u>, 773 F.3d 423, 426 (2d Cir. 2014); <u>see</u>

<u>supra</u> Section IV(B)(1).  Therefore, the <u>Rooker-Feldman</u> doctrine bars the court from

granting the relief Bailey seeks.

 Second, even construing the proposed breach of oral contract claim as a claim

for money damages, the proposed claim is barred by res judicata.  The court has

already analyzed the facts Bailey alleges in support of this claim in relation to the

related claim alleged under CUTPA.  <u>See</u> <u>supra</u> Section IV(B)(2).  For the same

reasons stated with respect to the CUTPA claim, Bailey could have raised his breach of

oral contract claim as a counterclaim in the foreclosure action.  <u>See</u> <u>id.</u>  He is, therefore,

barred by res judicata from raising the proposed breach of oral contract claim in this

action.

For these reasons, the court concludes that allowing Bailey to amend his Third

Amended Complaint to add a claim of breach of oral contract and a request for

enforcement of said contract would be futile.  Bailey's Motion to Amend (Doc. No. 60) is

denied.

## VI.    CONCLUSION

For the reasons stated above, the Motion to Dismiss filed by Blue Ribbon

Appraisals, LLC (Doc. No. 44); and the Motion to Dismiss filed by Interbay Funding,

LLC, Bayview Loan Servicing, LLC, and Bayview Asset Management, LLC (Doc. No.

47) are hereby **GRANTED**.  Bailey's Motion to Amend the Third Amended Complaint

(Doc. No. 60) is **DENIED**.

The court will allow Bailey to replead one more time consistent with this Ruling.

However, with respect to Counts Seven and the CUTPA claim in Count Six based on

the same allegations, the court concludes that repleading would be futile because, based on the correspondence Bailey attached to the Third Amended Complaint, it is clear that these claims are barred by the litigation privilege doctrine.  See supra Section IV(B)(5).  In addition, Bailey may not replead the CUTPA claim in Count Six that is based on the alleged breach of oral contract because amendment would be futile in light of the court's conclusion that that claim is barred by res judicata.  See supra Section IV(B)(2).

Bailey may replead Counts Four and Five (fraud and civil conspiracy based on the appraisal) as alleged against Blue Ribbon, if he can allege—with particularity, as required by Rule 9(b)—that Blue Ribbon committed fraud with respect to the appraisal, fraudulently concealed its actions such that the statute of limitations is tolled sufficiently, and that the appraisal contained "intentional misrepresentations."  See supra Section IV(A).

Bailey may replead Counts Four and Five (fraud and civil conspiracy based on the appraisal) against Interbay and the Bayview defendants, if he can allege—with particularity—that Interbay and the Bayview defendants committed fraud with respect to the appraisal and fraudulently concealed their actions such that the statute of limitations is tolled sufficiently.  See supra Section IV(B)(4).

**SO ORDERED**.

Dated this 4th day of April 2018 at New Haven, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

33