**United States District Court**
**District of Connecticut**

| | |
|---|---|
| DAVID BAILEY , <br><br>        Plaintiff, <br><br>        -v- <br><br>INTERBAY FUNDING, LLC d/b/a <br>BAYVIEW LOAN SERVICING, LLC and <br>BAYVIEW ASSET MANAGEMENT, LLC. <br><br> BAYVIEW LOAN SERVICING, LLC  d/b/a <br>INTERBAY FUNDING, LLC and <br>BAYVIEW ASSET MANAGEMENT, LLC. <br><br>BAYVIEW ASSET MANAGEMENT, LLC. <br>d/b/a INTERBAY FUNDING, LLC and d/b/a <br>BAYVIEW LOAN SERVICING, LLC <br><br>        Defendants, | DOCKET NO: 3:17 -CV-01457-JCH <br><br><br><br><br>JUNE 05, 2018 |

**COMPLAINT (replead after motion to dismiss)**

**JURISDICTIONAL ALLEGATIONS:**

1.    DAVID BAILEY is an individual residing in the state of Maryland.

2.    The Defendant INTERBAY FUNDING, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company and was the lender who funded the loan as indicated on line 807 the HUD-1.

3.    The Defendant BAYVIEW LOAN SERVICING, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company and was the company with which the Plaintiff dealt to obtain the loan and is a d/b/a BAYVIEW

ASSET MANAGEMENT, LLC.

4. The Defendant BAYVIEW ASSET MANAGEMENT, LLC is a Delaware corporation who conduct business in this State as a registered Foreign Limited Liability Company and is a d/b/a for BAYVIEW LOAN SERVICING, LLC.

5. This Court has diversity jurisdiction because the Plaintiff and the Defendants are from different states and the amount in controversy is over $300,000.00.

6. Venue is proper because the Real Estate transaction and the property which gave rise to this action are in this state.

## COUNT I FRAUD ( previously COUNT IV-FRAUD)
## (as to all Defendants)

1. The Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC are in business together for a profit and therefore, are general partners, are in privity with one another and therefore, are all liable for each other's acts and statements and acts and statements of any of their agents including their attorneys.

2. WWW.INTERBAY.COM is forwarded to WWW.BAYVIEWASSETMANAGEMENT.COM and when you call the INTERBAY FUNDING, LLC contact phone number, the phone is answered as Bayview.

3. The physical and mailing address for all three aforementioned Defendants: INTERBAY FUNDING LLC, BAYVIEW LOAN SERVICING, LLC and BAYVIEW ASSET MANAGE-MENT, LLC are identical and is the company who funded the loan as indicated in the HUD-1.

4. The Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC are all doing business as BAYVIEW and therefore, are general partners and liable for each other's acts.

5. On or about February 07, 2006 the Plaintiff was contacted by a family friend regarding the possibility of purchasing of a building located at 607-611 Washington Ave, in New Haven Connecticut "The building",

6. About one week thereafter, the Plaintiff got in contact with the owner of the building whose name was Kelly B. Moye aka Mr. Kelly Moye.

7. About the same time, Mr. Kelly Moye advised the Plaintiff of the price and told the Plaintiff to contact the mortgage company named BAYVIEW.

8. At the same time, Mr. Kelly Moye advised the Plaintiff that the mortgage company already has a good property appraisal and building inspection report and that if he wanted a copy of them, he could contact BAYVIEW LOAN SERVICING, LLC

9. The Plaintiff then contacted BAYVIEW LOAN SERVICING, LLC and was told by the customer representative that the Plaintiff could review them at the time of the Real Estate Closing.

10. The Plaintiff relied on the appraisal and the building inspection report and complied because he thought it was a good deal to acquire the building which was already occupied by a minority church.

11. The Plaintiff relied on the appraiser's appraisal which the Defendant Bayview had ordered through Premier 1 Mortgage Company whose owner died in prison after a convic-

tion for mortgage fraud.

12. The Plaintiff has learned recently in January, 2017 that the appraisal on the property of the Plaintiff never really took place according to the wife of the owner of Blue Ribbon Appraisals, LLC.  Essentially, the Defendant Bayview or its broker Premier 1 Mortgage Company fabricated the appraisal for the purchase of the property by the Plaintiff.

13. At about the same time, the Plaintiff learned that the date on the appraisal was 12 months before he purchased the property which much longer than the 90 days expiration date for an appraisal.

14. About the same time, the Plaintiff learned that his name and the name of Bayview were on the appraisal; however, the Plaintiff was told by the wife of the owner of Blue Ribbon Appraisal that his name should not have been on the appraisal because they have never done business with him or on his behalf and they have never done business with Bayview

15. Had the Plaintiff been aware of the appraisal, he would inquire as to the reason the appraisal was more than 12 months old and would not have closed on the loan.

16. On or about 3/06/2006, the agent of the Bayview Defendants, Premier 1 Mortgage Company or the Bayview Defendants used an old appraisal with a date of March 2005 which belonged to Mr. Moye (the seller) and edited the names and information about the purchaser and the bank to be the Plaintiff instead of Mr. Moye; thereby, misleading the Plaintiff and committing mortgage fraud by creating a fake appraisal because the appraisal contained intentional misrepresentations.

17. On 3/06/2006, when the Plaintiff closed, the changing of the information on the appraisal from the seller to the Plaintiff were statements of facts that were made by the De-

fendants or their agents to the Plaintiff when the closing occurred. The Defendants' attorney at the closing also made those statements of facts to the Plaintiff as he represented the Defendants during the closing.

18. On 3/06/2018, all of the information in the property condition report which did not report accurately the condition of the property were false and intentional misleading statements to mislead the Plaintiff and the banking authorities.

19. The agent of the Bayview Defendants, Premier 1 Mortgage Company or the Bayview Defendants knew or should have known the laws against using an appraisal that is older than 90 days because they are in the business of lending money. They knew or should have known the laws against taking an appraisal done/performed for a party and changing that information 12 months later to mislead others including the Plaintiff and the banking authorities to believe that the appraisal belongs to another person. They were all aware that a 12 month old appraisal should not be used to closed on a loan.

20. The agent of the Bayview Defendants, Premier 1 Mortgage Company or the Bayview Defendants never asked the Plaintiff for the appraisal fee before ordering the appraisal because the Plaintiff would have been entitled to get a copy right away and would discovered the issues or the Defendants would have never acted in the way they did.

21. The agent of the Bayview Defendants, Premier 1 Mortgage Company or the Bayview Defendants acted in such a way so as to prevent the Plaintiff from seeing and reviewing the appraisal before the closing.

22. During the period of financial distress of the Plaintiff during the years 2012,2013,2014 and prior to the institution of the state foreclosure case in 2014, the Defendants repeat-

edly promised the Plaintiff a modification each time he would ask for his closing paperwork and a copy of the appraisal.

23. Even as late as July 2017, the Defendants' response to a Qualified Written Request did not produce a copy of the requested paperwork and certainly, not the appraisal which is the reason the Plaintiff contacted Blue Ribbon Appraisal to get information and put the pieces together. As of today, the Plaintiff has not received a copy of his appraisal from the Defendants after several requests.

24. The Defendants intentionally concealed and continue to conceal the appraisal from the Plaintiff. That concealment has prevented the Plaintiff filing his lawsuit until he became aware of the issue with the appraisal. Had the Plaintiff been aware of the appraisal earlier, he would have done what he is doing now which is to file a lawsuit for fraud.

25. The concealment of the appraisal by the Defendants was for purpose of dealying the Plaintiff from commencing a suit against the Defendants which they have succeeded in doing until recently.

26. The Plaintiff was told by BAYVIEW that he did not need an attorney and that one would be provided to him at the closing and to go to the address that was provided to him and to bring his driver's license and the attorney would make a copy of it and that the Plaintiff would have to sign a lot of papers and not to worry. The Plaintiff was also told by BAYVIEW that he would receive copies of the papers executed at the closing after BAYVIEW received the papers. All these actions were intentional acts of deception to hide the appraisal and the closing documents from the Plaintiff.

27. The single attorney at the closing asked the Plaintiff to execute several documents very quickly and promised the Plaintiff that, he would get copies at a later date, after the pa-

pers were received by BAYVIEW.

28. To this day, the Plaintiff has NOT received copies of all the original closing paper from BAYVIEW, although the Plaintiff made several requests throughout the years since the closing took place.

29. The Plaintiff was told by BAYVIEW that both the building appraisal was perfect for the loan and that the building inspection report shows that the building was in good repair, up to Connecticut state building codes.

30. Soon after the closing, the Plaintiff discovered that the building needed a lot of work and was not up to code and thought it was just bad luck.

31. Over the years, BAYVIEW Loan Servicing LLC requested that the Plaintiff keep them posted on all the building code violations and expenses and BAYVIEW would request that the Plaintiff fax or mail copies of all the receipts and estimates for the work to be performed.

32. Over the years, when the Plaintiff would call BAYVIEW Loan Servicing LLC. to request copies of the closing papers, BAYVIEW would offer the Plaintiff a mortgage modification instead of sending the papers to the Plaintiff.  BAYVIEW did that at least three times.

33. On or about July 2014, the Plaintiff spoke with Mr. Paul, who is the Plaintiff's Mortgage Home Retention Specialist at Bayview Loan Servicing LLC. And he told the Plaintiff that the PRINCIPAL REDUCTION papers should have been received.

34.  Each time the Plaintiff would complain about the building being underwater in terms of value, the agent of Bayview Loan Servicing, LLC would put the Plaintiff on hold and then promise him a modification with a principal reduction.

35. Bayview Loan Servicing, LLC made such promise of modification with principal reduc-

tion right before it instituted a foreclosure against in Connecticut State Court in August, 2014.

36. The Plaintiff was told by Bayview not to worry about the foreclosure case.

37. On or about November 2014, the Plaintiff was on the phone with the BAYVIEW's agent who told the Plaintiff he was completing what he called an in house property appraisal a valuation in order to determine the principal reduction amount.

38. During the above phone conversation, the Bayview's agent told the Plaintiff that the value of the property was about ninety thousand dollars ($90,000.00).

39. During the above conversation, the BAYVIEW's agent told the Plaintiff that his new mortgage principal amount would be ninety thousand dollars ($90,000.00) because of the appraised value and he also promised the Plaintiff that the modification papers would be sent via FedEx overnight.

40. The above statements made by the Defendants' representatives were false and intentionally misleading to the Plaintiff to prevent him from discovering the truth about the original condition of property at the time of his purchased.

41. These conversations were recorded by the Defendants and will prove the Plaintiff's allegations.

42. The above false statements made by the Defendants' representatives were made in an effort to conceal the truth about the original condition of property at the time of his purchased.

43. That concealment was the purpose of dealying the Plaintiff from commencing a lawsuit against the Defendants as the Plaintiff is attempting to do now.

44. While the Plaintiff was waiting patiently for his modification papers via Fedex overnight ,

the Plaintiff received a letter in the mail dated November 10th. 2014 from Bayview Loan Servicing LLC. Lawyer which stated that the Plaintiff's property is in jeopardy of being foreclosed.

45. As a result of the above letter, the Plaintiff called BAYVIEW and spoke with his Retention Specialist Mr. Paul who told him not to worry because before the Plaintiff goes to court, the Plaintiff would already have received a PRINCIPAL REDUCTION and that therefore, the foreclosure court case would be null and void.

46. After waiting for never received the modification papers, the Plaintiff called Mr. Paul of BAYVIEW who told him that Bayview Loan Servicing LLC had ordered an EXTERIOR ONLY building appraisal report which appraised the property at one hundred ninety-five thousand ($195,000.00) and there, the previous promise of modification and loan reduction could be honored.

47. The Plaintiff requested to speak to a supervisor Mr. Tom Marvin who told him the same thing the previous agent told him; however, Mr. Marvin confirmed that BAYVIEW was aware that half (1/2) of the building was shut down by the City of New Haven for conditions that pre-existed the time when the Plaintiff purchased the property.

48. The above conditions that caused the city to shut down half (1/2) of the property were not reflected in the appraisal which showed that nothing was wrong with the property.

49. INTERBAY FUNDING, LLC aka BAYVIEW told the plaintiff that the property was in perfect condition for the loan and the Plaintiff relied on the appraisal to purchase the property.

50. On belief and information obtained by the Plaintiff this past November 2016, the appraisal done for the Plaintiff in order to obtain the loan from INTERBAY FUNDING, LLC

was never done for the Plaintiff but instead was done for the previous owner of the building, Defendant Kelly B. Moye, one year earlier in violation of the law.

51. The Defendants all concocted a plan to sell the Plaintiff a building which condition was misrepresented, from Mr. Kelly's offer to sell the building and offer to use his current mortgage company to speed up the process, the use of an appraisal that was done for the previous Mr. Kelly, the closing of the loan by an attorney provided by BAYVIEW to not producing any copies of any documents to the Plaintiff and to the building needed a lot of repairs.

52. While in Connecticut State Court of Appeal, on or about September 2016, the Plaintiff was told by a representative of Bayview Loan Servicing, LLC not to worry about the foreclosure and that he would get a modification which would void the foreclosure.

53. On or about June 2017, the Plaintiff sent a Qualified Written Request to BAYVIEW LOAN SERVICING, LLC and as of today 8/26/2017, the Defendant BAYVIEW LOAN SERVICING, LLC has failed to comply even after the Connecticut Banking Commissioner has contacted Bayview on behalf of the Plaintiff.

54. On information and belief, the Defendants INTERBAY FUNDING LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW LOAN SERVICING, LLC dba BAYVIEW ASSET MANAGEMENT, LLC aka BAYVIEW and BAYVIEW ASSET MANAGEMENT, LLC have created an account under the Plaintiff's name and social security number and that account has over three hundred thousand dollars ($300,000.00) in escrow.

55. The money in that escrow account belongs to the Plaintiff and the Defendants refuse to return the funds to the Plaintiff.

56. The Defendants have never stopped their behavior of misleading the Plaintiff from the time before the foreclosure was instituted to today.  The Defendants continued to mislead the Plaintiff until February 2017 when the Appellate Court rendered its decision that the Plaintiff lost.
57. The Defendants devised a plan to sell the Plaintiff a ruined property appraised as being good.
58. The Defendants knew and intended to defraud the Plaintiff by using a fake appraisal in order the Plaintiff purchase the property from the Defendant Mr. Kelly and obtain a loan from the Defendants BAYVIEW and intended to defraud the Plaintiff by continuously promising the Plaintiff a modification each time he would ask for his closing papers while never actually ever sending the papers to the Plaintiff.
59. The Defendants induced the Plaintiff to purchase the ruined building with a fake appraisal and to get a loan that the Defendants knew would likely fail.
60. The Defendants knew the appraisal was fake.  The Defendants knew the promise of a modification was for purpose of delaying the Plaintiff from commencing a lawsuit.
61. The Defendants knew the building was not in the condition reported in order to be qualified for the loan on or about 3/06/2018.
62. Had it not been for the fake appraisal and using the same mortgage company of the previous owner Defendant Mr. Kelly, the Plaintiff would not have been able to purchase the property which turned to be a ruin.  Had it not been for the continuous promise of modification, the Plaintiff would have received his closing papers and would have discovered intentional misleading statements in the appraisal and property condition report.

63. As a result of the Defendants' conduct, the Plaintiff incurred damages

64. As of the general partnership between the above BAYVIEW Defendants and the INTERBAY Defendant, each is liable for the actions of the others.

Case 3:17-cv-01457-VAB   Document 70   Filed 06/05/18   Page 12 of 13

**WHEREFORE**, the Plaintiff demands:

1. Money damages

2. Award of legal fees.

3. Attorneys' fees

4. Any other relief the Court deems fair and equitable.

## JURY DEMAND

The Plaintiff demands a jury trial on all issues so triable.

THE PLAINTIFF.

/s/__Andre Cayo (ct29012)__
Andre Cayo, Esq. (Ct29012)
Law Offices of Cayo & Associates, LLC
84 W. Park Place, 3rd Floor
Stamford, CT 06901
203-517-0416  Phone
203-517-0418 Fax
Cayolaw@gmail.com

## CERTIFICATION

This is to certify that on this date hereof, a copy of the foregoing was electronically filed and served on anyone unable to accept the electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic system or by mail to parties exempt from the ECF system.

 /s/ Andre Cayo (ct29012)

Andre Cayo, Esq.