UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID BAILEY,
    *Plaintiffs*,

v.

INTERBAY FUNDING, LLC, ET AL,
    *Defendants*.

No. 3:17-cv-1457 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

David Bailey ("Plaintiff") originally sued Interbay Funding, LLC, Bayview Loan Servicing, LLC, and Bayview Asset Management, LLC (collectively, "Defendants"), along with a third defendant subsequently dismissed from the case, on August 29, 2017.

Mr. Bailey's claims arose out of the appraisal of a mixed-use property purchased in 2006 and the property's later foreclosure in 2014. Although these claims were dismissed on April 4, 2018, Mr. Bailey was granted leave, "one more time," to file an amended complaint. Mr. Bailey filed a Fourth Amended Complaint on June 5, 2018, consisting of one fraud claim against Defendants. The parties engaged in discovery, and Defendants filed a motion for summary judgment on June 14, 2019.

For the following reasons, Defendants' motion for summary judgment is **GRANTED.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations[1]

In 2005, Kelly B. Moye owned the property at 607-611 Washington Avenue, New Haven, CT ("the Property"). Defs.' Statement of Material Fact ¶ 1-4, ECF No. 106-2 (June 14, 2019 ("Defs.' SOMF"). At some point, Mr. Bailey learned through a family friend about the possibility of purchasing the Property.[2] *Id.* ¶ 1.

On or about May 26, 2005, Joseph Walters at W&A Mortgage Group retained Blue Ribbon to conduct a valuation of the Property as part of its potential sale from Mr. Moye to Mr. Bailey. Defs.' SOMF Ex. 2, ECF No. 106-3 (Liberti Decl. ¶ 4-5); Defs.' SOMF Ex. 2-1, ECF No. 106-4 (Blue Ribbon Appraisals Invoice (May 26, 2005) (showing that Mr. Moye paid the invoice for Commercial Appraisal of a Mixed Use Property at 609 Washington Avenue, New Haven, CT, on June 1, 2005)).

On May 31, 2005, Mr. Liberti, the owner of Blue Ribbon, prepared an Appraisal Report for the Property and estimated its market value as $295,000. Defs.' SOMF Ex. 2-2, ECF No. 106-5 (Liberti Appraisal Report (May 31, 2005)). *Id.* The report reflects that Mr. Walters of the

---

[1] The District of Connecticut's Local Rule 56(a) requires that a non-moving party's Statement of Material Facts in Opposition to Summary Judgment "shall include . . . a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." D. Conn. L. Civ. R. 56(a)2(i). Furthermore, "[e]ach denial . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." *Id.* 56(a)3. "When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted." *SEC v. Global Telecom Servs. L.L.C.,* 325 F. Supp. 2d 94, 109 (D. Conn. 2004).

Mr. Bailey did not submit a Local Rule 56(a)2 Statement of Fact, but rather submitted a Declaration responding to Defendants' Statement of Fact. Even if this Declaration were treated as a Local Rule 56(a)2 Statement of Material Fact, it fails to comply with the Local Rules' requirements and fails to cite record evidence. The Court therefore deems the Defendant's Local Rule 56(a)1 Statement to be admitted for purposes of this motion. The Court will not rely, however, on Defendants' assertions if they are unsupported by admissible evidence in the record.

[2] Mr. Bailey stated during his deposition that he could not remember exactly when he learned about the possibility of purchasing the Property, but that it could have been in 2005. Defs.' SOMF Ex. 1, ECF No. 107 (Bailey Dep. 27:6-28:11).

W&A Mortgage Group—the Lender—had requested the appraisal for the Borrower/Client "Bailey." *Id.*

"On November 3, 2005, Mr. Bailey first submitted a loan application to Interbay to secure financing for the purchase of the Property from [Mr.] Moye." Defs.' SOMF ¶ 9; Defs.' SOMF Ex. 4-A, ECF No. 106-8 (Loan Details & Memo)). At some later point, Mr. Bailey signed a Real Estate Purchase and Sale Agreement to purchase the Property from Mr. Moye for $285,000. Defs.' SOMF Ex. 4-B, ECF No. 106-9 (Real Estate Purchase and Sale Agreement) ("First Purchase and Sale Agreement"). By November 21, 2005, however, Mr. Bailey decided not to purchase the Property and withdrew his loan application. Loan Details & Memo.

On January 5, 2006, Premier 1 Mortgage submitted a Uniform Residential Loan Application (the "Second Loan Application") to Interbay for the Property on behalf of David Bailey, reflecting a purchase price of $285,000. Defs.' SOMF Ex. 4-C, ECF No. 106-10 (Uniform Residential Loan App. (Jan. 5, 2006)). Mr. Bailey later signed a fee agreement, stating: "I engaged Premier 1 Mortgage Company as my agent and broker for obtaining a loan commitment" for the Property, and agreeing to pay Premier 1 Mortgage Company $5,265 for its services. Defs.' SOMF Ex. 5, ECF No. 106-23 (Fee Agreement (Feb. 23, 2006)). "As part of the loan origination process, Interbay ordered an appraisal of the property." Defs.' Ex. 4, ECF No. 106-7 (Piedra Decl. on behalf of Interbay ¶ 9) ("Interbay Decl.").

On January 10, 2006, Mr. Bailey signed a fee authorization form authorizing the credit card of Sherry J. Bailey for payment of an upfront appraisal processing fee for the Property. Defs.' SOMF Ex. 4-E, ECF No. 106-12 (Upfront Appraisal Processing Fee Disclosure & Payment Authorization).

3

"On January 23, 2006, Mercury Real Estate Services ('Mercury') was engaged to appraise the Property, which appraisal was completed on February 3, 2006." Interbay Decl. ¶ 10. Mercury appraised the property at $257,000. *Id.* ¶ 11. After the appraisal, Interbay "conducted an internal review of the appraisal." *Id.* ¶ 19; Defs.' SOMF Ex. 4-G, ECF No. 106-15 (Internal Interbay Appraisal Review Form (Feb. 8, 2006)). As part of the underwriting process, Interbay reviewed and summarized the Mercury appraisal in a Real Estate Summary which was created on February 21, 2006. Interbay Decl. ¶ 14; Defs.' Ex. 4-H, ECF No. 106-15 (Real Estate Summ. (Feb. 21, 2006)).

Interbay "did not review or rely upon any appraisal from Blue Ribbon Appraisals, LLC at any time during the loan origination process relating to the Second Loan Application." Interbay Decl. ¶ 24.

On February 16, 2006, Mr. Bailey executed a statement: "I, David Bailey, do accept as the final price for the property located at 609-611 Washington Avenue New Haven, CT 06511 at $257,000. This is the appraised value of the property." Defs.' Ex. 4-I, ECF No. 106-16 (Feb. 16, 2006) ("Statement Accepting Appraised Value").

On February 28, 2006, Mr. Bailey and Mr. Moye executed a new Real Estate Purchase and Sale Agreement, wherein Mr. Bailey agreed to purchase the Property for $257,000. Defs.' Ex. 4-J, ECF No. 106-17 (Real Estate Purchase and Sale Agreement Feb. 28, 2006) ("Second Purchase and Sale Agreement"). The Agreement states that "Buyer represents that Buyer has examined the property and is satisfied with the physical condition . . . . Neither Seller nor any representative of the Seller or Buyer has made any representation or promise other than those expressly stated herein which Buyer has relied upon in making this Agreement." *Id.* ¶ 8.

Mr. Bailey testified that he never requested nor viewed a copy of an appraisal before applying for a loan to purchase the property. Bailey Dep. ¶¶ 35:21-36:4. 37:12-14; 57:24-59:24; 145:9-20.

On March 6, 2006, Mr. Bailey purchased the Property for $257,000, entering a mortgage and security agreement with Interbay as the Lender. Defs.' SOMF Ex. 4-N, ECF No. 106-21 (Open-End Mortgage Deed and Security Agreement (Mar. 6, 2006)) ("the Mortgage"). Mr. Bailey signed a loan application and promissory note from Interbay to borrow $205,600. Defs.' SOMF Ex. 4-K, ECF No. 106-18 (Uniform Residential Loan App. (Mar. 6, 2006)) ("Third Loan Application"); Defs.' SOMF Ex. 4-M, ECF No. 106-20 (Adjustable Rate Promissory Note (Mar. 6, 2006)) ("Promissory Note"). Under the terms of the Promissory Note, Mr. Bailey agreed to make monthly payments of $2,284.00. Promissory Note.

On August 28, 2006, Interbay assigned the Mortgage to Bayview. Defs.' Ex. 8-C, ECF No. 106-30 (Assignment of Mortgage (Aug. 28, 2006)).

By September 24, 2008, Mr. Bailey had allegedly defaulted on the terms of the Promissory Note. Defs.' SOMF Ex. 8, ECF No. 106-27 (Trueba Decl. on behalf of Bayview ¶ 7) ("Bayview Decl."). To cure the default, Mr. Bailey entered into a Stipulation Agreement and Loan Adjustment Agreement, which required an initial payment and several subsequent trial payments. Defs.' Ex. 8-D, ECF No. 106-31 (Stipulation Agreement (Sept. 24, 2008)) ("2008 Agreement"). Mr. Bailey made several payments, and on or about January 9, 2009, his loan was permanently modified in accordance with the 2008 Agreement. Bayview Decl. ¶ 9-10.

On June 7, 2009, Mr. Bailey sent Bayview a hardship letter seeking another loan modification, noting that the New Haven "department of zoning and permit office" had closed four out of the six units in the building and required him to perform major upgrades to the

5

building. Bayview Decl. ¶ 14; Defs.' Ex. 8-E, ECF No. 106-32 (Hardship Letter (June 7, 2009)) ("2009 Hardship Letter").

On October 19, 2010, Mr. Bailey sent Bayview another hardship letter requesting another loan modification, stating that he "unknowingly inherited the poor conditions of this property," and that he "had to spend an excessive amount of [his] household savings on the rehab of this property, to get the building up to state code." Defs.' Ex. 8-F, ECF No. 106-33 (Hardship Letter (Oct. 19, 2010)) ("2010 Hardship Letter").

On October 28, 2010, Mr. Bailey entered into another Stipulation Agreement and Modification Agreement to cure another default on the Note and Mortgage. Bayview Decl. ¶ 24; Defs.' Ex. 8-G, ECF No. 106-34 (Stipulation Agreement (Oct. 28, 2010)) ("2010 Agreement"). Under this Agreement, Mr. Bailey again agreed to make an initial down payment followed by several trial payments. Bayview Decl. ¶ 25-26. Mr. Bailey made several payments, after which his loan was permanently modified in accordance with the 2010 Agreement. *Id.* ¶ 26-27.

"On or around June 29, 2011, Bayview received a check for $43,011.24 from Western World Insurance company as the result of an insurance claim submitted by [Mr. Bailey.]" *Id.* ¶ 28. Mr. Bailey was working with a contractor to conduct roof repairs. *Id.* ¶ 29-30. "On December 13, 2011, Bayview's inspector verified that the repairs to the Property were completed and the remaining insurance proceeds were disbursed to [Mr. Bailey]." *Id.* ¶ 32.

On January 7, 2013, Mr. Bailey sent another hardship letter to Bayview requesting a loan modification due to "the major down turn in our countries [sic] economy, loss of employment, and all the new renovations I had to complete over the years." Defs.' Ex. 8-H, ECF No. 106-35 (Hardship Letter (Jan. 7, 2013)) ("2013 Hardship Letter"). Mr. Bailey had allegedly defaulted on the Mortgage and Promissory Note. Bayview Decl. ¶ 33-34. To cure the default, Bayview

offered another Stipulation Agreement and Loan Adjustment Agreement, which Mr. Bailey signed on January 28, 2013. *Id.* ¶ 34; Defs.' Ex. 8-I, ECF No. 106-36 (Stipulation Agreement (Jan. 28, 2013)) ("2013 Agreement").

On April 27, 2014, Mr. Bailey sent another hardship letter to Bayview requesting a loan modification and reduction of his loan principal based on "loss of employment and all the MAJOR renovational [sic] cost that we had to pay for and are currently paying for." Defs.' SOMF Ex. 3, ECF No. 106-6 at 18 (Hardship Letter (Apr. 27, 2014)) ("2014 Hardship Letter"). Mr. Bailey wrote:

> The [P]roperty was very old and in need of basically total rehab, before we purchased it. Not to mention the fact that the Real Estate Market Property Values have totally crashed in New Haven, Connecticut! Case in point, the [P]roperty was recently appraised and that appraisal came in at[] $95.000.00.

*Id.* On June 4, 2014, Mr. Bailey "asked a Bayview representative to reconsider his principal reduction loan modification that was denied." Bayview Decl. ¶ 37.

Mr. Bailey allegedly "spoke with Paul Petti, an asset manager at Bayview, multiple times between June 2014 and May 2017 regarding possible loss mitigation options to resolve his default on the [Promissory] Note and Mortgage." *Id.* ¶ 38. Mr. Bailey and Mr. Petti had several conversations between June 2014 and October 2014 discussing loss mitigation options, during which Mr. Bailey stated that he had borne the cost of numerous repairs on the building. *Id.* ¶ 39-44. Mr. Bailey also learned that "he had three previous [loan] modifications that he breached and that his [new loan] application was likely going to be denied." *Id.* ¶ 42. Mr. Bailey stated in response that he had "bought a building and they told [him] in the appraisal that it was good to go . . . and come to find out after all these years" that he had to make repairs to the building and move some of the tenants to a hotel. *Id.*

7

On October 27, 2014, the Connecticut Superior Court entered a judgment of strict foreclose against Mr. Bailey as to the Property, finding that Mr. Bailey owed a debt of $254,187.09 plus fees. Defs.' SOMF Ex. 7, ECF No. 106-26 (Order, *Bayview Loan Serv. v. Bailey*, NNI-CV-146007566-S (Conn. Super. Ct. Oct. 27, 2014)) ("Foreclosure Judgment").

B.     **Procedural History**

On August 29, 2017, David Bailey sued Interbay Funding, LLC ("Interbay"); Bayview Loan Servicing, LLC, and Bayview Asset Management, LLC (collectively "Bayview"); and Blue Ribbon Appraisals, LLC ("Blue Ribbon"). Compl., ECF No. 1 (Aug. 29, 2019). Mr. Bailey alleged the violation of various federal and state statutes as well as that Defendants had engaged in common law civil conspiracy. *See* Compl.

Over the next few months, Mr. Bailey moved to amend his Complaint, and Defendants moved to dismiss, several times. *See* Mot. to Dismiss, ECF No. 23 (Oct. 30, 2017); Mot. to Dismiss, ECF No. 24 (Oct. 30, 2017); Am. Compl., ECF No. 31 (Nov. 20, 2017) (adding a fraud count); Second Am. Compl., ECF No. 33 (Nov. 21, 2017) (modifying factual allegations); Third Am. Compl., ECF No. 42 (Dec. 4, 2017) (seeking to add factual allegations and an additional fraud count); Mot. to Dismiss, ECF No. 44 (Dec. 7, 2017); Mot. to Dismiss, ECF No. 47 (Jan. 4, 2018); Fourth Mot. to Am./Correct, ECF No. 58 (Mar. 2, 2018) (seeking to add a count of breach of oral contract); Fourth Mot. to Am./Correct, ECF No. 60 (Mar. 2, 2018).

On April 4, 2018, the Honorable Judge Janet C. Hall granted Defendants' motion to dismiss the Third Amended Complaint. Ruling on Mot. to Dismiss, ECF No. 64 (Hall, J.) (Apr. 4, 2018), *available at* 2018 WL 1660553. Judge Hall found that Mr. Bailey's fraud and civil conspiracy claims, and his CUTPA claim based on the appraisal, were barred by the statute of limitations, *id.* at 8-11, 26-27; he had not alleged facts sufficient to meet the heightened pleading

standards required for equitable tolling of the statute of limitations for fraud claims, *id.* at 8-11; he had failed to adequately plead "intentional misrepresentation" by Blue Ribbon, *id.* at 12; his claim related to loan modification was barred by res judicata, *id.* at 21; and his fraud and CUTPA claims were barred by litigation privilege to the extent they were based on "communications made by counsel for Bayview Loan Servicing, LLC, in the course of the foreclosure litigation," *id.* at 27-30. Judge Hall also denied Mr. Bailey's fourth motion to amend his complaint because

> the request for relief is, in effect, a request that this court "review and reject the judgment" of the Connecticut Superior Court in the foreclosure action, because this court could not enforce the alleged oral contract without vacating the foreclosure judgment. Therefore, the *Rooker-Feldman* doctrine bars the court from granting the relief [Mr.] Bailey seeks.

*Id.* at 31-32 (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).

Judge Hall also noted that, "even construing the proposed breach of oral contract claim as a claim for money damages, the proposed claim is barred by res judicata." *Id.* at 32. Judge Hall, however, granted Mr. Bailey permission to replead, "one more time," the fraud and civil conspiracy counts against Defendants, "if he can allege—with particularity—that [Defendants] committed fraud with respect to the appraisal and fraudulently concealed their actions such that the statute of limitations is tolled sufficiently." *Id.* at 33. Judge Hall required further, with respect to Blue Ribbon, that Mr. Bailey allege with particularity "that the appraisal contained 'intentional misrepresentations.'" *Id.*

Judge Hall set a deadline of April 25, 2018, for Mr. Bailey to file amended pleadings. Set Deadlines/Hearings (Apr. 4, 2018). Mr. Bailey subsequently requested and received two extensions of time to file amended pleadings. *See* ECF Nos. 65-68 (Apr. 23, 2018 through May

9

25, 2018). Judge Hall noted that Mr. Bailey's second motion for extension of time "is reluctantly granted," and stated further:

> In the future, counsel should be aware that the court intends to deny any Motion to Extend filed by plaintiff's counsel that fails to comply with Local Rule 7(b) (inquire of/state opposing counsel's position, file any motion for extension at least 3 days before deadline expires). Further, good cause is required to extend a deadline and the court wonders what counsel did in this matter after his trial ended (April 27) and when he fell ill (~May 9).

Order, ECF No. 68 (Hall, J.) (May 25, 2018).

Nevertheless, Mr. Bailey filed a third motion for extension of time to replead. Third Mot. for Extension of Time, ECF No. 69 (May 29, 2018). Judge Hall did not rule on that motion, but on June 5, 2018, Mr. Bailey submitted a fourth amended complaint. Am. Compl., ECF No. 70 (June 5, 2018) ("Fourth Am. Compl."). Judge Hall retroactively granted Mr. Bailey's motion for extension of time to replead. Order, ECF No. 71 (June 6, 2018).

Mr. Bailey's Fourth Amended Complaint consisted of a single count of fraud against Interbay and the Bayview Defendants. Fourth Am. Compl. He withdrew all claims against Blue Ribbon. *Id.*

On July 2, 2018, the remaining Defendants filed an Answer with Affirmative Defenses to the Fourth Amended Complaint. Answer, ECF No. 77 (July 2, 2018).

On October 1, 2018, Judge Hall entered a text entry onto the docket directing the parties to file a joint 26(f) scheduling report within fourteen days. Not. to Counsel, ECF No. 78 (Oct. 1, 2018). Judge Hall noted that the court had denied a motion for extension of time to file the 26(f) report on November 27, 2017,

> Ten months have passed, the Motions to Dismiss were decided on [April 4, 2018], and still a joint 26(f) Report has not been filed. . . Given the age of this case and the motion practice thus far, the court

10

expects that discovery is well underway and proposed deadlines should reflect as much.

*Id.*

On October 15, 2018, the parties filed a joint 26(f) report. Report of Rule 26(f) Planning Meeting, ECF No. 79 (Oct. 15, 2018).

On October 18, 2018, Mr. Bailey filed a fifth motion to amend/correct his complaint. Mot. for Leave to File Am. Compl., ECF No. 83 (Oct. 18, 2018). Mr. Bailey sought to add a claim for breach of oral contract and promissory estoppel against Defendants, arguing that the Fourth Amended Complaint already contained the factual allegations to support these claims, but that "counsel inadvertently left" out the breach of oral contract claim, and that "[c]ounsel simply needs to clarify the elements of those claims." *Id.* Judge Hall denied Mr. Bailey's motion to amend during a scheduling conference held on October 24, 2018. Minute Entry, ECF No. 87 (Oct. 24, 2018). Judge Hall also noted that "the court does not expect to grant further extensions." *Id.*

On June 14, 2019, Defendants filed a motion for summary judgment. Mot. for Summ. J., ECF No. 106 (June 14, 2019). In support of their motion. Defendants submitted a memorandum of law, Mem. in Supp. of Mot. for Summ. J., ECF No. 106-1 (June 14, 2019) ("Defs.' Mem."); and a statement of material facts, Defs.' SOMF.

On July 25, 2019, after requesting two extensions of time and being granted one, *see* ECF Nos. 108-110; Mr. Bailey filed an objection to Defendants' motion for summary judgment, Obj., ECF No. 111 (July 25, 2019) ("Pl.'s Obj."). In support of his motion, Mr. Bailey attached two identical "Declaration[s] of David Bailey." Bailey Decl., ECF No. 111 at 7-22 (July 25, 2019). On the same day, Judge Hall granted *nunc pro tunc* Mr. Bailey's second motion for extension of time. Order, ECF No. 112 (July 25, 2019).

On August 2, 2019, Defendants filed a response to Mr. Bailey's objection to the motion for summary judgment. Resp. re Obj., ECF No. 113 (Aug. 2, 2019) ("Defs.' Resp.").

On September 5, 2019, the case was reassigned to this Court. Order of Transfer, ECF No. 114 (Sept. 5, 2019).

## II. STANDARD OF REVIEW

A motion for summary judgment will be granted if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913

(DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding nonmoving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment).

The court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). Conclusory allegations or denials will not be credited. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). After drawing all inferences in favor of the non-moving party, if the court finds that no reasonable trier of fact could find in the non-movant's favor and the moving party is entitled to judgment as a matter of law, the court will grant the summary judgment motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

### III. DISCUSSION

In Connecticut, fraud is subject to a three-year statute of limitations. Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."). Section 52-577 is a statute of repose, which means that the applicable period for the statute of limitations begins on "the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." *Byrne v. Burke*, 112 Conn. App. 262, 272 (2009); *see Kidder v. Read*, 150 Conn. App. 720, 726–27 (2014).

"[U]nder Connecticut law[,] fraudulent concealment for purposes of the tolling statute is consistently treated as akin to other forms of fraud, with similar requirements of proof." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 422 (2d Cir. 1999) (citing *Puro v. Henry*, 188 Conn. 301, 308 (1982) (observing, in a discussion of fraudulent concealment, the general rule that "[f]raud is not to be presumed, but must be strictly proven.

13

The evidence must be clear, precise, and unequivocal")). The plaintiff bears the burden of proving fraudulent concealment for purposes of tolling the statute of limitations. *UCF I Tr. 1 v. Berkowitz, Trager & Trager, LLC*, No. 3:17-CV-1325 (VAB), 2019 WL 1430105, at *7 (D. Conn. Mar. 29, 2019) ("'To establish that the [defendant] had fraudulently concealed the existence of [her] cause of action and so had tolled the statute of limitations, the [plaintiff] had the burden of proving that the [defendant was] aware of the facts necessary to establish this cause of action . . . and that [he] had intentionally concealed those facts from the [plaintiff].'" (quoting *Connell v. Colwell*, 214 Conn. 242, 250 (1990))).

To prove fraudulent concealment, a plaintiff must prove that the defendants were actually aware of the facts necessary to establish the cause of action, and that they intentionally concealed those facts from the plaintiff with the very purpose of delaying the plaintiff from filing an action. *Gibbons v. NER Holdings, Inc.*, 983 F. Supp. 310, 316 (D. Conn. 1997) (citing *Bound Brook Ass'n v. Norwalk*, 198 Conn. 660, 665-66 (1986); *Bartone v. Robert L. Day Co., Inc.*, 232 Conn. 527 (1995)).

Mr. Bailey claims that Defendants committed fraud by "induc[ing him] to purchase the ruined building with a fake appraisal and to get a loan that Defendants knew would likely fail." Fourth Am. Compl. ¶ 59. He alleges that Defendants "used an old appraisal with a date of March 2005 . . . and edited the names and information about the purchaser and the bank to be [Mr. Bailey] . . . thereby[] misleading [Mr. Bailey] and committing mortgage fraud by creating [a] fake appraisal because the appraisal contained intentional misrepresentations." *Id.* ¶ 16. Mr. Bailey alleges that Defendants and their agents "acted in such a way so as to prevent [him] from seeing and reviewing the appraisal before closing." *Id.* ¶ 20-21. He also alleges that he relied on Defendants' representations about the appraisal when he purchased the Property. *Id.* ¶ 10-14.

14

Defendants argue that because Mr. Bailey's "claim is premised on the allegedly erroneous appraisal and building inspection report" whose contents were communicated to Mr. Bailey before or at the time of his closing on the Property on March 6, 2006, but he did not file this lawsuit until August of 2017, his claim is barred by the statute of limitations on fraud. Defs.' Mem. at 12.

Mr. Bailey argues that the statute of limitations may be tolled in this case because Defendants concealed the allegedly fraudulent appraisal, which allegedly contained "the truth about the original condition of [the P]roperty at the time of his purchase[]," with "the purpose of de[la]ying the Plaintiff from commencing a lawsuit," Fourth Am. Compl. ¶ 43.

Defendants argue that the Court should reject Mr. Bailey's argument for tolling the statute of limitations because he "simply cannot establish that there [w]as a fraud, let alone that Defendants were aware of this fraud." Defs.' Reply at 6. They argue further that, even if Mr. Bailey could show that there was a fraud of which Defendants were aware, he cannot show that Defendants intentionally concealed any appraisal from him in an attempt to prevent a lawsuit. *Id.* at 6-7. Finally, Defendants urge the Court to grant their motion for summary judgment because of a "complete lack of any factual and/or legal support in" Mr. Bailey's objection to the motion for summary judgment. *Id.* at 1. "Despite having pursued this lawsuit for years, including receiving more than a thousand pages of documents and deposition testimony, Plaintiff cannot produce a scintilla of evidence to substantiate the allegations of the Complaint." *Id.*

The Court agrees.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts

or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). A plaintiff "must present concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Alteri v. Gen. Motors Corp.*, 919 F. Supp. 92, 94-95 (N.D.N.Y 1996), *aff'd*, 116 F.3d 465 (2d Cir. 1997) (internal quotations omitted); *see also Celotex Corp.*, 477 U.S. at 324 (holding that Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). "Where a statement is not supported by the record, the Court either notes such or does not rely on the purported fact in its determination." *Johnson v. Conn. Dep't of Admin. Servs.*, 972 F. Supp. 2d 223, 229 (D. Conn. 2013), *aff'd*, 588 F. App'x 71 (2d Cir. 2015). Additionally, a district court is not obligated to "perform an independent review of the record to find proof of a factual dispute. A district court is obligated only to consider the materials cited to it by the parties." *Morales v. N.Y. State Dep't of Labor*, 530 Fed. App'x. 13, 14 (2d Cir. 2013) (internal quotation marks and citation omitted).

Mr. Bailey alleges repeatedly in his Fourth Amended Complaint and in his Declaration that Defendants intentionally concealed an allegedly fraudulent appraisal with the purpose of delaying his ability to file a lawsuit. *See* Fourth Am. Compl. ¶ 40, 42-43, 56, 60; Bailey Decl. ¶ 70-80. Yet there is no record evidence to support these allegations. These unsubstantiated allegations are insufficient to create a genuine issue of material fact as to whether Defendants intentionally concealed an alleged fraud. *See Prunier v. City of Watertown*, 936 F.2d 677, 680 (2d Cir. 1991) ("To be sure, a jury may not base its verdict on mere speculation, surmise or guesswork."); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (plaintiffs "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome" summary

judgment (internal citation omitted)); *Alteri*, 919 F. Supp. and 94-95 (A plaintiff "must present concrete evidence from which a reasonable juror could return a verdict in [her] favor."), *aff'd*, 116 F.3d 465 (2d Cir. 1997) (internal quotations omitted).

On the record evidence—submitted entirely by Defendants—Mr. Bailey cannot establish that Defendants had actual awareness of facts necessary to establish fraud or that they intentionally concealed those facts with the purpose of delaying Mr. Bailey taking legal action.

Indeed, numerous documents show that Mr. Bailey took steps over the course of several months towards purchasing the Property—including three loan applications, a fee agreement for a broker, a fee authorization form for an appraisal, a statement accepting the appraised value, and two purchase and sale agreements. *See* Loan Details & Memo; First Purchase and Sale Agreement; Upfront Appraisal Processing Fee Disclosure & Payment Authorization; Internal Interbay Appraisal Review Form; Statement Accepting Appraised Value; Second Purchase and Sale Agreement; the Mortgage; Third Loan Application; Promissory Note.[3]

And while Mr. Bailey argues that he requested but never received the appraisal, Bayview declares that he did not, Bayview Decl. ¶ 39-45; and none of the Hardship Letters in the record include a request for loan origination documentation or a copy of the original appraisal, 2009 Hardship Letter; 2010 Hardship Letter; 2013 Hardship Letter; 2014 Hardship Letter.

---

[3] Mr. Bailey asserts, without any support, that the signatures on documents produced by Defendants are fraudulent. *See, e.g.*, Bailey Decl. ¶ 81 ("Many of the signatures on the documents produced by Defendants are not my signatures. A blind person could see they are not my signatures."). These unsupported assertions are unavailing, particularly in light of Defendants' expert testimony that the signatures are in fact Mr. Bailey's. Defs.' SOMF Ex. 6-1, ECF No. 106-25 (John Reznikoff Expert Report, Questioned Documents and Handwriting (Sept. 30, 2019)).

A reasonable jury thus could not conclude that Mr. Bailey has met his burden of showing that Defendants intentionally concealed an alleged fraud. *Martinelli*, 196 F.3d at 422 (quoting *Puro*, 188 Conn. at 308) ("Fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise, and unequivocal."). The statute of limitations therefore bars Mr. Bailey's fraud claim.

Accordingly, Defendants' motion for summary judgment must be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of January, 2020.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE